CHARLES F. LUDLOW et al., appellants,

*v.*

JAMES C. LUDLOW et al., respondents.

A decedent went into a store to execute his will. His brother James was there, and also Mr. Harrison and Mr. Miller. James said to Harrison, in the hearing of the decedent, "My brother has been making his will, and I would like to have you witness it," to which Harrison replied, "All right." The decedent, James and Harrison, then went into a small enclosure or desk, with glass around the top, so that persons inside of it were visible to others in the store. James said to Harrison, "This is my brother's will, I would like to have you witness it," whereupon decedent signed it, and Harrison, who saw him sign it, also signed as a witness. James then stepped out of the enclosure, and going to Miller, who was engaged at a counter about ten feet away, said, "Mr. Miller, Mr. Harrison has been kind enough to witness my brother's will, now I want you to," and then Miller went into the enclosure where decedent remained (Harrison having stepped out to make room for Miller), and signed his name to the will as a witness. Before James asked Miller to sign, the latter did not know that decedent was signing his will, although he surmised so because James had told him, a few weeks before, that his brother was coming there to execute his will, and that he (James) would like him (Miller) and Harrison to witness it. Miller testified that he thinks decedent heard James request him to witness the will. Miller did not see decedent sign nor hear him acknowledge his signature to the will.—*Held*, that there was no publication of the will by decedent in Miller's presence, and therefore that there was no execution of it, in compliance with the statute.

Appeal from decree of Essex orphans court.

*Mr. J. W. Taylor,* for appellants.

*Mr. T. N. McCarter,* for respondents.

THE ORDINARY.

This is an appeal from a decree of the orphans court of Essex county, admitting to probate a paper writing, purporting to be the last will and testament of William A. Ludlow, deceased.

Ludlow *v.* Ludlow.

The controversy between the parties is as to the legality of the execution of the instrument. The will was signed on the 28th of October, 1879 (though it is dated November 28th), at a store in the city of Newark, to which the testator had come for the purpose. The witnesses whose names are signed to it, are James E. Harrison and Wesley C. Miller. The testator's brother, James C. Ludlow, was in the store (which was Mr. Harrison's) when the testator entered. When the testator came in, Mr. James C. Ludlow said to Mr. Harrison, "My brother has been making his will, and I would like to have you witness it," to which Mr. Harrison replied, "All right;" and they three then went into an enclosure—a desk—on one side of the store. This enclosure was not so high but that persons outside of it in the store could see men standing within it. The upper part of it, above the desk, was of glass. After the three went inside, Mr. James C. Ludlow said, addressing Mr. Harrison, "This is my

NOTE.—By statute, a publication is necessary in the states of New York, New Jersey, Louisiana, North Carolina and Arkansas, *1 Jarm. on Wills* (*5th Am. ed.*) *207, note;* also in Vermont, *Roberts* v. *Welch, 46 Vt. 164;* California, *Johnson* v. *Rice* (*1881*), *11 Rep. 664;* and Missouri, *Odenwaelder* v. *Schorr, 8 Mo. App. 458.*

In Maine, Massachusetts, Kentucky, Illinois, Indiana, South Carolina and Virginia, mere execution of a will, with knowledge of its contents and attestation, is sufficient, *1 Jarm. on Wills* (*5th Am. ed.*) *209, note;* *Turner* v. *Cook, 36 Ind. 129;* *Black* v. *Ellis, 3 Hill* (*S. C.*) *68;* and also in Iowa, *Hulse's Will, 52 Iowa 662;* Minnesota, *Allen's Will, 25 Minn. 39;* Connecticut, *Canada's Appeal, 47 Conn. 450;* and Mississippi, *Watson* v. *Pipes, 32 Miss. 451.*

*Query.* As to Michigan, *McGinnis* v. *Kempsey, 27 Mich. 363;* Wisconsin, *Downie's Will, 42 Wis. 66;* and Pennsylvania, *Mealey's Estate, 11 Phila. 161;* and England, *Ross* v. *Ewer, 3 Atk. 156;* *Moodie* v. *Reid, 7 Taunt. 361;* Spilsbury v. *Burdett, 4 Ad. & El. 14, 10 Cl. & Fin. 340;* *Vincent* v. *Bishop, 3 E. L. & Eq. 198;* *Bond* v. *Seawell, 3 Burr. 1775;* *Trimmer* v. *Jackson, 4 Burn's Ec. Law 102;* *Johnson* v. *Johnson, 1 Cr. & Mee. 140;* and Austria, *22 Alb. L. J. 324.*

In the following cases the attestation has been deemed sufficient:

In *Wright* v. *Wright, 7 Bing. 457,* one witness was called in by testator, who explained to the witness that the paper which witness attested was his will; afterwards, when the first witness was not present, two other witnesses subscribed their names to the will, but neither of them was informed that he was witnessing a will, nor did either of them see testator's signature thereto.

In *Inglesant* v. *Inglesant, L. R.* (*3 P. & D.*) *172,* the decedent signed her

Ludlow *v.* Ludlow.

brother's will, I would like to have you witness it," and there-
upon the testator signed the paper, and Mr. Harrison, who saw
him sign it, also signed it as a witness.   Mr. James C. Ludlow
then stepped out of the enclosure and went to Mr. Miller, who
stood at a counter, at the distance of about ten feet from where
the testator was standing.   Mr. Miller says that at the time he
was engaged in handling goods at the counter, or in some such
business, Mr. James C. Ludlow, addressing him, said, "Mr.
Miller, Mr. Harrison has been kind enough to witness my
brother's will, now I want you to," and thereupon Mr. Miller
went into the enclosure, where the testator was (Mr. Harrison
had stepped out to make room for Mr. Miller), and signed his
name to the will as a witness.   Before he was asked to witness
the will he did not know that the testator was signing his will.
He says he had an impression that that was what the parties
were doing there, because some time—from two to four weeks—

will in the presence of one witness.  On the entry of the second witness, a
person present audibly directed him to sign his name under that of decedent,
which he did, and the other witness then signed.  The decedent said nothing.
The will was lying open, and headed in large letters, "This is the last will
and testament of" &c.  It also had a full attestation clause.

In *Gilman* v. *Gilman, 1 Redf. 354, 38 Barb. 364,* the desk whereat the tes-
tator and one of the subscribing witnesses sat when the testator signed his will
and the witness attested, was separated from the desks where the two other
witnesses sat, by a brick wall or column four feet broad, but it did not appear
that their positions rendered their seeing the testator impossible.  They were
requested to witness the will by the first-named witness, thus: "Mr. Gilman
[the testator] requests you to witness his will," in the presence and hearing
of the testator, and they witnessed it without any request or declaration by
the testator.

In *Stewart's Will, 2 Redf. 77,* the testator had declared to the draughtsman
that he had selected the persons, who, in fact, afterwards became the witnesses,
for that purpose, and had requested them to be sent for; and after he had sub-
scribed they were directed [by whom, does not appear] to sign, the testator
meanwhile moving away from the table where he had signed while they were
looking on.

In *Forman's Case, 1 Tuck. 205, 54 Barb. 274,* one attesting witness testified
that the testatrix told her in the room where the will was executed, before
signature, that it was her will; the other testified that while testatrix did not
tell her so in that room, she told her, when she went to the kitchen of the
house to call her, that she wanted her to witness her will.

Ludlow v. Ludlow.

before that Mr. James C. Ludlow had told him that the testator was coming there to sign his will, and that he, Mr. James C. Ludlow, would like to have him and Mr. Harrison witness it. Mr. Miller did not see the testator sign the will, nor did the testator verbally acknowledge his signature in his hearing. Mr. Miller testifies as follows :

" *Q.* What were you doing when William A. Ludlow (the testator) came in that morning? *A.* I don't know; handling some cloth or goods or something like that. *Q.* Attending to your business, whatever it was? *A.* Yes, sir. *Q.* But you did not know when Mr. Harrison was called away and went in that room (the enclosure), that they were executing a will, did you? *A.* No, sir; I did not know it. *Q.* And will you please to state whether you were attending to your business, or whether you stopped and looked around and gazed at them, to see what they were doing? *A.* I may have glanced there. *Q.* Did you look with any knowledge of what was going on? *A.* I don't know as I did, sir. *Q.* Did you know what was going on? *A.* I did not know. *Q.* You did not see Mr. Harrison sign? *A.* No, sir. *Q.* You did

In *Morris* v. *Porter, 52 How. Pr. 1*, M., when about to execute her will, sent for B. to be a witness thereto; when B. came the will was lying on a table in front of M., and B. was asked by P., who had drawn the will, to sign it as a witness, such request being made in M.'s hearing. B. then signed the will as a witness, in the presence of M., who said, " thank you." B. testified that he did not see M. sign the will, nor could he say whether or not her signature had been made thereto, when he signed it. P., however, testified that M. signed in the presence of all the witnesses.

In *Thompson* v. *Stevens, 62 N. Y. 634*, the testatrix went out and brought in a person whom she had requested to act as a witness; the will was then read aloud by the draughtsman, in this witness's presence. They all then went into another room where the other witness was, and he read the will aloud; the testatrix then signed it, and handed it to the draughtsman, with a request that he should witness it, and she also said, in the hearing and presence of all, that the one she had brought in would be a witness to it, and requested him to sign it, which he did. The other witness was told in her presence that he was needed to sign as a witness, and he then signed.

In *Dack* v. *Dack, 19 Hun 630, 84 N. Y. 663*, the testator signed a codicil in the presence of the draughtsman, before the other two witnesses, who were in an adjoining room, were called, and they were called by the draughtsman in a tone loud enough for the testator to hear, " to witness a paper." After they came in, the draughtsman asked the testator if that was his signature, and he said that it was; then the draughtsman asked him if he wanted the witness to sign the will, and he said, Yes,—whereupon this witness signed, and also the other one.

not see the testator sign?  *A.* No, sir.  *Q.* And he did not say anything to you?  *A.* No, sir.  *Q.* He did not say it was his last will?  *A.* No, sir. *Q.* He did not request you to sign it?  *A.* No, sir.  *Q.* Did anybody request you to sign it as a witness in his presence?  *A.* Mr. James did.  *Q.* Where was he when he requested you to sign it?  *A.* About five or six feet off. *Q.* He came to where you were?  *A.* Yes, sir.  *Q.* And stayed where you were while you went in?  *A.* I think Mr. James came along with me, or came near the door (of the enclosure).  *Q.* Did he say anything when you got within hearing of Mr. William?  *A.* No, sir.  *Q.* Did he say anything to you that was audible to Mr. William A. Ludlow?  *A.* He did not say anything to me, only that which he said outside about the will."

He also says that he should think that what Mr. James C. Ludlow said to him could have been heard by the testator, and that he thinks it was heard by him.  He further says that the testator did not acknowledge the paper to be his will.  Also, that the witness heard nothing that was said while Mr. Harrison was inside the enclosure, and did not see the latter sign, nor did

In *Odell* v. *Lidlum*, *3 Redf. 181, note,* the servant of the testator summoned one of the witnesses as such ; both witnesses were in testator's presence when he gave instructions for and signed the will, and they signed in his presence, the one summoned by the servant at the request of the notary who drew the will, the other at testator's request.

In *Smith* v. *Smith*, *2 Lans. 266,* the testatrix signed the will in the presence of the witnesses and the draughtsman, and acknowledged it to be her last will. The draughtsman then said to one of the witnesses, "Now, Mr. White," handing him the pen. Mr. White signed his own name, and then handed the pen to the other witness, who also signed. Also *Moore* v. *Moore, 2 Bradf. 261; Belting* v. *Leichardt, 2 T. & C. 52.*

In *Bundy* v. *McKnight, 48 Ind. 502,* a request made by the scrivener who drew the will, that the witnesses should attest it, in the presence and hearing of the testator, and without objection by him, was followed by actual attestation in his presence. Also, *Etchison* v. *Etchison, 53 Md. 348.*

In *Huff* v. *Huff, 41 Ga. 696,* testator came to the warehouse of B. and asked him to be a witness to his will ; he brought S. with him as another witness, and they all waited some time for G., but as he did not come and A. stepped into the room, B. said to testator that A. would answer the purpose as well as G.  Testator said he was not acquainted with A., and B. said he would introduce him.  B. called up A. and introduced him to testator, remarking to A. that testator wanted him to witness his will, whereupon they all stepped to a desk, and the testator signed it and then the three witnesses.

In *Meurer's Case, 44 Wis. 392,* the witnesses went to testator's house for the express purpose of witnessing his will, which testator then knew ; they also

Ludlow *v.* Ludlow.

he hear the testator say the paper was his will. Obviously, the testator no more signed the will in his presence than in the presence of any other person in the store, who may, at the time, have happened to be within the same distance from the testator, or even further off, and who was engaged in his own business and was not aware of the presence of the testator. The intention of the statute is that the testamentary act shall itself be witnessed. The signing may be acknowledged by the testator, but the signature must either be made or acknowledged by him in the presence of the witnesses; and his saying that the paper is his will is not an acknowledgment of his signature, within the meaning of the statute. The English statute (*1 Vict. c. 26 § 9*) provides that the signature shall be made or acknowledged by the testator in the presence of two or more witnesses, present at the same time, and that such witnesses shall attest and shall subscribe the will in the presence of the testator. In *Ilott* v. *Genge*,

---

knew that B., who drew the will, was there for that purpose, and saw him at work on it, and B. requested them to come into the room where testator lay, for the purpose of witnessing his will, which they did, and remained there while B. read the will aloud and testator signed it; they then signed, in testator's presence, without objection on his part, he knowing that they were signing as witnesses to his will.

In *Allison* v. *Allison, 46 Ill. 61,* the ordinary attestation clause to a will was read aloud, after the testator had signed, in the presence of the testator and the witnesses to whom the testator handed a pen, and they then signed, although the testator uttered no word while they were present.

In *Cheatham* v. *Hatcher, 30 Gratt. 56,* a testatrix, Mrs. H., executed her will in the presence of G. and C., and G. said to her, "Do you wish me to sign it as a witness," she said she did, and he then subscribed his name in her presence. It was supposed by all of them that only one witness was necessary, and consequently C. went away from the house. After he was gone, a messenger from one L. informed them that two witnesses must attest the will, and the matter was openly talked about while a messenger had been sent after C. When C. returned to the room, G. told him aloud that it was necessary for him to sign the will, saying to him, "You were present, and saw Mrs. H. sign it, and heard her acknowledgment when I signed it," and he said, yes, he was. C. was then told that it was necessary to sign in the presence of Mrs. H., and C. subscribed it, within a few feet and directly in front of Mrs. H. There was a difference of opinion between G. and C., as shown by their testimony, as to Mrs. H.'s consciousness when C. signed.

Ludlow *v.* Ludlow.

*3 Curt. 160,* where probate of the paper propounded was denied, Sir H. J. Fust indeed said, in delivering judgment, that the construction he would be inclined to put on that clause of the statute was, that the production of the will with the signature to it, and requesting the witnesses to attest, and their attesting and subscribing the will, would be sufficient; but on the appeal to the privy council, the judicial committee, consisting of the Lord Chancellor, Lord Brougham, Lord Campbell, Vice-Chancellor Bruce and Sir S. Lushington, were unanimously of opinion that the mere circumstance of calling in witnesses to sign does not amount to an acknowledgment of the signature. *Ilott* v. *Genge, 8 Jur. 323.* And so, too, it has been held, notwithstanding the fact that the testator speaks of the instrument to the witnesses at the time as his will. *Hudson* v. *Parker, 8 Jur. 786; Shaw* v. *Neville, 1 Jur. (N. S.) 408.* Our statute provides that the will "shall be signed by the testator, which signature shall be

In the following cases, the attestation has been deemed insufficient:

In *Pearson* v. *Pearson, L. R. (2 P. & D.) 451,* the decedent called A., who was an illiterate man, into his room and asked him to make his mark to a paper, which he did. A., at the decedent's request, then fetched his wife, who was living in the house, and she also, at decedent's request, placed her mark on the same paper. There was no evidence that the signature of the decedent was on the will at the time these marks were made, nor did the decedent, in any way, explain to the witnesses the nature of the document they signed.

In *Griffith* v. *Griffith, 5 B. Mon. 511,* when a testator, who was lying in bed, was informed that a witness to his will, K., had arrived, he told G., the draughtsman, to go on with the business, and then signed the will; G. also signed it as a witness. When K. went into the room, G. told him that the paper was the will of C. (the testator), and he wished him to witness it, and thereupon he put his name to the paper. K. did not know that testator was in the room, until shortly afterwards he saw him rise from the bed and go into an adjoining room.

In *Tucker* v. *Oxner, 12 Rich. 141,* the will was drawn by testatrix's son J., who requested G. to go into his mother's house to attest her will. There were two rooms in the house, a large and a small one; testatrix was in the large room, through which witness passed; the rooms were divided by a partition with a door in it; he passed into the small room with J.; the will was on a table, and G. sat down and signed his name between the signatures of the other two witnesses; after doing so he rose up, and, as he turned around, he saw testatrix leaning against the door-post of the partition door, where she .

*Ludlow v. Ludlow.*

made by the testator, or the making thereof acknowledged by him, and such writing declared to be his last will in the presence of two witnesses present at the same time, who shall subscribe their names thereto as witnesses in the presence of the testator." *Rev. p. 1247.* It will be seen that it not only requires that the signature be made or acknowledged in the presence of the witnesses, but that the testator declare the paper to be his last will in their presence. The English statute does not require the latter. In *In re McElwaine, 3 C. E. Gr. 499,* this court, speaking of the requirements of our statute, said : " Four things are required, first, that the will shall be in writing ; secondly, that it shall be signed by the testator ; thirdly, that such signature shall be made by the testator, or the making thereof acknowledged by him in the presence of two witnesses ; fourthly, that it shall be declared to be his last will and testament in the

could have seen him signing ; she did not speak to him at all, nor did she ever afterwards speak to him of her will.

In *Baker* v. *Woodbridge, 66 Barb. 261,* the subscription by testatrix was not made in the presence of either of the witnesses ; nor was it acknowledged by her to either of them, and to one of them there was no declaration by her or by any one in her presence that the instrument was her will.

In *Harris's Will, 1 Tuck. 293,* decedent signed his will, while alone, and then called in the witnesses, one after the other, from an adjoining room, and said to each one, " Witness that," pointing to the will lying on his desk. See *Logue* v. *Stanton, 5 Sneed 97 ; Randebaugh* v. *Shelley, 6 Ohio St. 307 ; Haynes* v. *Haynes, 33 Ohio St. 598 ; Hoffman* v. *Hoffman, 26 Ala. 535.*

In *Kingsley* v. *Blanchard, 66 Barb. 317,* one witness testified that there was nothing said or done by which she knew that the testatrix desired her to sign as a witness. The other witness testified that one B., who was in the room and near the bed where testatrix lay, asked testatrix, after she had signed the will, if this was her last will and testament, and if she wished those witnesses to sign it or to witness it ; that testatrix replied, she did not know as she could say that it was her last will ; that B. then said, " The last one you have made now," and she replied, " Yes, the last one I have made now." See *Alexander* v. *Beadle, 7 Coldw. 126, 9 Baxter 604 ; Wooster* v. *Wooster, 4 Rich. 409 ; Hitch* v. *Wells, 10 Beav. 84.*

In *Bagley* v. *Blackman, 2 Lans. 41,* a witness was notified, when sent for, that he was needed to attest a will, and went to testator's house for that purpose. When he went into the room, decedent requested one S. to bring " that paper " from a trunk in the room, which S. did, and also asked S. where the

presence of those witnesses.   Each and every one of these requi-
sites must exist.   They are not in the alternative.   The third
requisite contains an alternative, but one of those alternatives
must exist.   The second requisite—the signing by the testator—
must exist.   The second alternative of the third, to wit, that he
acknowledge the making of the signature, will not supply the
want of the second."

In that case the testatrix did not, from feebleness, sign her
name, but, at her request, another person signed it for her, and
though the point of the case was that the signature was not
made by her, the case is important as showing the care which
has been taken in construing the statute not to depart from the
plain requirements of its language.   In the case in hand there
was no declaration to Mr. Miller that the paper was the testa-

---

pen and ink were, which S. brought and laid them all on a table.   Decedent
then sat down and signed the ·paper, and asked the witness if he would wit-
ness that paper, which he did.   Decedent then asked where was N. (the
other witness), who had stepped out.   When N. came in, decedent said some-
thing to him about signing it, which N. did.

In *Neugent* v. *Neugent, 2 Redf. 369*, the scrivener read over the will to the
testatrix, who said it was all right, and that the scrivener should sign it for
her (on account of her physical weakness).   Testatrix said nothing to the
scrivener about his attesting it, but somebody in her presence requested that
he should be a witness, and thereupon he signed as such.   The scrivener
afterwards asked C., the other witness, to sign also, which C. did.   C. testified
that he did not hear testrtrix say anything when she signed, or when he
signed.

In *Stein* v. *Wilzniski, 4 Redf. 441*, the testatrix was a German and under-
stood English very imperfectly.   One witness, M., read over the will, which
was written in English, and rendered it into German for the testatrix ·by
verbally giving her a synopsis of it; she then signed it, as did also M.,
and then M. asked testatrix in German (which the other witness, D., did not
understand) if she wanted D. to witness it also, and she replied in the affirma-
tive, whereupon M. asked D. in English to attest it, which D. thereupon did.
See *Hess's Appeal, 43 Pa. St. 73.*

In *Heath* v. *Cole, 15 Hun 100*, it is said that although when a man is well
and strong, a declaration made by a third person, in his presence, that an
instrument is his will, and a request by such person to the witnesses to sign it,
may be assumed to be the acts of the testator, yet where he is very feeble and
able to speak but faintly, such assumption cannot be made, unless his adop-
tion of the acts of such person be clearly proved.—Rep.

Ludlow v. Ludlow.

tor's will, except the statement made to him by Mr. James C. Ludlow, "Mr. Miller, Mr. Harrison has been kind enough to witness my brother's will, and now 1 want you to." This may have been heard by the testator. Conceding that it was, and that it therefore may be regarded as having been said by him, it was only a declaration that the paper which Mr. Miller was about to witness (but which was not then before him, and was not pointed out or shown to him) was the testator's last will. It cannot be construed to be an acknowledgment of the signature on the paper. Mr. Miller cannot, of his own knowledge, say who wrote that signature, except as he may know the writing of the testator, and so be able to speak on the subject. But the testator did not tell him, nor did any one else in the testator's presence, that the signature to the will was written by the testator. Indeed he does not say that he saw the signature at all. He probably did so, however. He undoubtedly saw it when he signed his name. Had Mr. Miller been requested to be a witness before the signature was made, and had he stood by accordingly, where he could have seen if he had looked, it would have made no difference whether he in fact saw the signing or not. But when the will was signed he had not been asked to be a witness. It was only after the testator and Mr. Harrison had both signed that he was requested to be a witness. He was in fact called after the testator had signed in the presence of Mr. Harrison. Reference was made on the hearing to the construction put upon a statute like ours by the courts of New York, who hold that where a testator produces a paper to which he has personally affixed his signature, requests the witnesses to witness it, and declares it to be his last will and testament, that is all that the law requires, and is a substantial acknowledgment of his signature. *Baskin* v. *Baskin, 36 N. Y. 416; Gilbert* v. *Knox, 52 N. Y. 125.* It is enough to say at this time, in that connection, that while I heartily approve of the principle which underlies and produced that construction— the principle of recognizing a substantial compliance with the statute as sufficient—there is no proof here of any acknowledgment whatever, either by word or in fact. The testator did not

make the request, either to Mr. Miller or Mr. Harrison, but his brother did it. His brother, in making the request, in fact spoke in the first person. He said "I want you" &c. The testator does not appear to have uttered a single word in the whole matter, either to Harrison or Miller, except as he said "Good morning" in return to the salutation of the former. No assistance is to be had in this case from the attestation clause. It is merely "in the presence of." And obviously the affidavit made by Mr. Harrison before the surrogate to the effect that Mr. Miller was present when the testator signed the will, is of no importance. I have no doubt that the testator signed the will in the presence of Mr. Harrison, and that the paper was intended by him for his will, and I am loth to defeat his intention, but the construction I deem it my duty to put upon the statute constrains me to refuse to admit the paper to probate. The decree of the orphans court, and the proceedings of the surrogate, so far as the admitting the will to probate is concerned, will be reversed, but as to the payment of costs and counsel fees, the decree appealed from will be affirmed. The costs of the appeal, with a counsel fee of $100 to each side, will be paid out of the estate