Ludlow *v.* Ludlow.

JAMES C. LUDLOW et al., appellants,

*v.*

CHARLES F. LUDLOW et al., respondents.

| 36 | 597 |
| 50 | 436 |
| 50 | 730 |
| 50 | 748 |
| 36 | 597 |
| 56 | 764 |

At the time of executing a last will there must be some word or sign by the testator, or some one acting for him, in his presence and hearing, to clearly indicate his recognition of the testamentary act in which he is engaged, and of the genuineness of the signature and will which are presented to the witnesses for their attestation. The words used in the statute, "acknowledgment" and "declare," demand an open expression either in words or unmistakable acts.

On appeal from a decree of the ordinary, whose opinion is reported in *Ludlow* v. *Ludlow, 8 Stew. Eq. 480.*

A writing, purporting to be the last will and testament of William A. Ludlow, deceased, bearing date November 28th, 1879 (the true date being October 28th, 1879), was propounded by the executors to the surrogate, appealed to the orphans court of the county of Essex, and admitted to probate. On appeal to the prerogative court, the decree of the orphans court was reversed, and probate refused. Only the subscribing witnesses, James E. Harrison and Wesley C. Miller, were examined to prove the will in the orphans court, and on their testimony the question is raised whether the writing was legally executed. The material facts proved are that William A. Ludlow came to the store of James E. Harrison in Newark, and his brother, James C. Ludlow, was there at the same time. James came to Harrison and said : " My brother has been making his will, and I would like to have you witness it." These three went inside of a desk. James said when there : " This is my brother's will ; I would like to have you witness it," then William signed it, and Harrison put his signature to it as a witness. At that time Miller was in the store, standing between the desk and the stove ; the stove was about fifteen feet from the desk, and he was between them, about ten feet from the desk. James, after he had

signed, went outside of the desk to where Miller stood, and said to him: " Mr. Miller, Mr. Harrison has been kind enough to witness my brother's will, now I want you to." Harrison went from the desk as Miller entered it, to about where Miller had stood to make room for him, and Miller stood at the desk beside William and signed his name as witness. The desk is described as a low enclosure with transparent glass at the top of it, about five feet high, and open at the easterly end. Miller did not see William A. Ludlow or Mr. Harrison sign the paper, and says that when they and James were in the desk he did not know what they were doing, but had the impression that William was making his will, and got that impression from the fact that James C. Ludlow had told him, from two•to four weeks before, that his brother was about to make his will, and he thought to have Mr. Harrison and him to witness it; and as he came in that morning and went behind there to write, he presumed that was it. He says he was attending to his business, and may have glanced at them, but did not know what they were doing. He was where he could see them, and where William could see him. He further says, in answer to questions put to him, that he did not see Mr. Harrison sign the paper; he did not see William A. Ludlow sign it; that he, William, did not say any-thing to him; did not say it was his last will, and did not request him to sign it. He also says that James said nothing to him, only what he said outside about the will, and that this was spoken in an ordinary tone. He did not hear anything said inside the desk, and does not know whether William heard James request him to witness the will. At the foot of the writing, above the name " Wm. A. Ludlow," were the words, " Signed and sealed this twenty-eighth day of November, in the year of our Lord eighteen hundred and seventy-nine," and over the names of the witnesses, the words " In the presence of."

*Mr. T. N. McCarter*, for appellants.

*Mr. J. W. Taylor*, for respondents.

Ludlow *v.* Ludlow.

The opinion of the court was delivered by

SCUDDER, J.

After careful consideration of the evidence of the subscribing witnesses to this writing, with the desire, if possible, to give effect to the apparent intention of the decedent, I have been unable to reach the conclusion that it should be admitted to probate. The statute of March 12th, 1851, prescribes the formalities to be observed in the due execution of wills and testaments, and unless these appear in some manner, there is no legal sufficiency to devise, pass or bequeath the estate and property of the owner. These requirements differ from those found in the laws of other states, and in the various decisions which have been given, we are likely to be misled, unless these differences, and the exact statements of facts are most closely observed. It is, therefore, safer and easier to interpret the words and phrases of our own law by the usual rules of construction, and apply them to the facts of each case as they may be presented. In making this examination we are struck with the number and particularity of these forms, as if it were the purpose of the law to protect the person who would dispose of property by will, from the possibility of deception or undue influence. By our law, the will and testament (1) shall be in writing; (2) shall be signed by the testator; (3) this signature shall be made by the testator, or the making thereof acknowledged by him; (4) and such writing declared to be his last will in the presence of two witnesses present at the same time, who shall subscribe their names thereto as witnesses, in the presence of the testator. The last clause, relating to the presence of witnesses and the presence of the testator, requires that all shall be together when the signature is made, or the making thereof acknowledged, and when the declaration that it is his will is made. Our earlier statute, passed March 17th, 1714, required that all wills and testaments to devise lands, tenements and hereditaments should " be made in writing, signed and published by the testator in the presence of three subscribing witnesses." This differs from the English statute of *29 Car. II. c. 3* § *5* mainly in the points that while by the latter the will

shall be signed only, our statute requires that it shall be both signed and published; and while by the construction given to the English statute, an acknowledgment by the testator of his signature in the presence of witnesses was sufficient, although they did not see him sign his name, such acknowledgment was not by our law regarded as proof of the signing. *Combs* v. *Jolley, 2 Gr. Ch. 625.* These differences are compared and discussed in *Compton* v. *Mitton, 7 Hal. 70.*

The expression " in presence of witnesses," used in the statute, is there said to be satisfied if the subscribing witnesses were so situated that they could and would naturally see the signing and hear the publishing. The statute of 1851 changed this law, made the acknowledgment of the signature proof of signing, retained the act of publication, in different phraseology, in the presence of two witnesses. The alteration made by substituting " declared to be his last will" for " published by the testator," does not change the requirement that there shall be some word or act by the testator, or in his presence, by which it may be manifested to the witnesses called to attest that the testator knew, and wished them to know, that he was executing his last will and testament. *Mundy* v. *Mundy, 2 McCart. 290 ; In re McElwain's Will, 3 C. E. Gr. 499.*

The words of attestation above the names of the testator and the witnesses in this paper, " signed and sealed &c.," and " in presence of," are not proof of publication according to the statute. In *Compton* v. *Mitton* and *Combs* v. *Jolley,* the court say that the better and safer rule is to require a literal construction of the statute in regard to the publication ; and in *Allaire* v. *Allaire, 8 Vr. 312, 325,* it is said that, if the attestation clause does not contain all the requisites to the making of a will, affirmative proof must be made of its execution in the manner and with the formalities prescribed by the statute. With this burden of proof resting on the proponents, and with the requirements of the statute before us, we must examine the facts of this case to see whether there has been a due execution of this will. In some points it is conformed to the statute. It is in writing ; it is signed by the testator ; it is attested by the names of two wit-

nesses; but the signature was not made in the presence of two
witnesses present at the same time. This is manifest from the
facts that Mr. Miller was ten feet away from the place where
the signature was made inside the desk; he was at the time en-
gaged in his work in the store, and his attention had not been
specially called at that time to the act in which William A.
Ludlow was engaged. Mr. Harrison was near and saw him
sign his name, but Mr. Miller testifies that he did not see him
writing, or subscribing his name to the paper, nor did he know
at the time that he was executing his will. He was not then
a witness, called upon for that purpose. If the writing was
legally executed, it must be under the alternative requirement
that the making of the signature was acknowledged by the testa-
tor in the presence of two witnesses present at the same time.
But there was no acknowledgment of the signature, nor any
declaration of the testator that the writing was his last will and
testament, in the presence of two witnesses present at the same
time. This was not done in words, for the only expression of
William A. Ludlow after he came into the store, testified to by
the witness Mr. Harrison, was his salutation of " good morning "
as he entered. Nor does it appear that by any act he designated
the signature as his, or the writing as his will, when both wit-
nesses were present. It is left uncertain by the evidence whether
the request made by James C. Ludlow, when he went to Mr.
Miller and asked him to witness the will, was heard by his
brother, who was standing inside the desk. It is not necessary
that the testator should, by his own words, acknowledge the sig-
nature, and declare the writing to be his last will; this in some
cases may be impossible through sickness or bodily infirmity.
It may be done in his presence and hearing by another acting
for him with his assent. *Whitenack* v. *Stryker, 1 Gr. Ch. 8.*
But he must, by some word or sign, clearly indicate his recogni-
tion of the testamentary act in which he is engaged, and of the
genuineness of the signature and will which are presented to the
witnesses for their attestation. The words used in the statute,
" acknowledgment " and " declared," demand an open expres-
sion either in words or unmistakable acts; and we have no right

to change their obvious meaning, or substitute conjecture for positive proof of conformity to their requirement.

The case of *Inglesant* v. *Inglesant*, *L. R. (3 P. & D.) 172*, where the will was admitted to probate, most nearly resembles this case in the facts, but the English statute of wills (*1 Vict. c. 26 § 9*) does not require any declaration or publication by the testator in the presence of witnesses, in addition to the acknowledgment of the signature. But in this case the counsel against the will said that in all the reported cases the testator did some act, or said some word during the proceeding, and cited many authorities for his assertion. The late case of *In re Goods of Mary Gunstan*, *L. R. (7 P. D.) 102 (1882)*, upon another point is instructive on the question of the sufficiency of an acknowledgment under the statute, and many previous cases are examined. The court say that not only must there be an acknowledgment, within section 9 of the wills act, but the witnesses must at the time of the acknowledgment see, or have the opportunity of seeing, the signature of the testator. But I have purposely avoided other references to cases decided elsewhere, for reasons already given.

Upon another point presented in the argument of counsel it is very certain that the affidavit of James E. Harrison, one of the subscribing witnesses, taken before the surrogate, when the will was propounded for proof before him, cannot have the effect claimed for it, of outweighing the evidence of both Harrison and Miller, who describe particularly the manner of the execution of the will. Where there is a perfect attestation clause, supported by the affidavit of one of the subscribing witnesses, the presumption is very strong in favor of the due execution of the will; but where the attestation clause is defective, as in this case, and from the testimony of both witnesses it appears that the will was not duly executed, the customary formal affidavit of one of them on offering the will for probate is entitled to little weight. The case of *Wright* v. *Rogers*, *L. R. (1 P. & D.) 678*, cited by the proponents' counsel, was unlike this. There was a full attestation clause, and one of the witnesses had died; the other testified that the will was not duly executed, but the court doubted

this evidence, which was opposed by proof, and gave effect to the attestation. In *Croft* v. *Croft, 4 Sw. & Tr. 10*, where both witnesses swore that the will was not duly executed, and there was no opposing proof, the will was rejected. The full particulars given by both witnesses, where there is no failure of memory or apparent purpose to deceive, are better evidence than the general affidavit of one witness to the will, and should control the judgment of the court.

The decree of the ordinary will be affirmed and the will admitted to probate, but, under the circumstances, costs of all parties, including a counsel fee of $100 to each side in this court, will be ordered to be paid out of the estate.

*Decree unanimously affirmed.*