This is an appeal from a decree of the Orphans Court granting probate of a will. Testatrix, who was approximately sixty years old, executed the will on May 17th, 1940, three days before her death. She died in a hospital from leukemia, which followed an attack of pneumonia, and was in the hospital for about a month. The will in question made bequests to her church and its pastor, and directed that her real estate be sold, out of which bequests were made to a nephew and two sisters, and the residue of the estate was left to three nieces. A prior will had provided that her entire estate should be divided between one of her sisters and her daughter, who takes nothing under the will now before the court. The will was contested before the Orphans Court by this niece.
The contest of the will was made on two grounds — that the testatrix lacked testamentary capacity and that the will was improperly executed. The Orphans Court found adversely to the appellant on both these issues. While there is a conflict of the testimony, and some of it of such a nature as to render somewhat doubtful the propriety of the findings of the Orphans Court, I do not feel justified in reversing its decision.
Unquestionably the testatrix was in the last stages of exhaustion *Page 596 
physically at the time of the execution of the will, so much so that she was unable to sign the will but executed it only by her mark. Her mind was also apparently sluggish, and for a considerable time prior to the execution she was scarcely responsive to remarks addressed to her. The attending physician went so far as to state that in his opinion she was incapable of giving instructions as to the terms of the will or of comprehending what she was doing when she executed it. On the other hand, the testimony of one of the witnesses, John A. McKeon, if believed, as it evidently was by the Orphans Court Judge, indicates sufficient mental capacity to enable her to make a valid will.
The will was drawn by an attorney, an uncle of John A. McKeon, on instructions brought to him by this nephew. The uncle had been sent for but was confined to his house on account of illness, and never saw the testatrix. He sent his nephew to the hospital to ascertain the terms of the will. The nephew testified that he went to the hospital and had a talk with the testatrix, who told him what she wished the provisions of the will to be, and took these instructions to his uncle, who drafted a will, and the next day he took the proposed will to the testatrix, who then told him that she wanted some changes made in regard to the bequests to the church and pastor. A new will was then prepared accordingly by the uncle, and the nephew took it to the hospital the next day where it was executed. Under the circumstances of the testatrix' condition, she being then very weak and obviously dying, it would seem that it would have been proper to take extraordinary precautions to see that the execution of the will was attended with every formality and careful attention to every detail. The witness McKeon testified that he read the will to her, and she expressed her approval of it. This was not done, however, in the presence of the other two witnesses, who were internes in the hospital, rather hurriedly and casually called in to act as witnesses. They were vague in their recollection of what happened, but they both testified that McKeon asked the testatrix if it was her will and she wished them to act as witnesses, and that she gave some form of assent. *Page 597 
As pointed out by the Orphans Court, the attestation clause is in proper form and is prima facie evidence of the facts stated in it. Lacey v. Dobbs, 63 N.J. Eq. 325.
Nor is an express statement necessary by the testator that he acknowledges his signature and declares it to be his last will. It may be done by another acting for him with his assent.Ludlow v. Ludlow, 36 N.J. Eq. 597.
As to mental capacity, the requirements are only that one must know of what his property consists, and be able to select the objects of his bounty, and understand what disposition he wishes to make. In re Lucas, 124 N.J. Eq. 347.
In view of this, the findings of the Orphans Court will not be disturbed.
A decree will be advised affirming the decree in the court below.