28 N.J. Super. 220 (1953)
100 A.2d 346
IN THE MATTER OF THE ESTATE OF EVERITT KILBURN TAYLOR.
Superior Court of New Jersey, Appellate Division.
Argued October 5, 1953.
Decided November 6, 1953.
*221 Before Judges CLAPP, GOLDMANN and EWART.
Mr. William H. Campbell, Jr., argued the cause for appellants.
Mr. A. Harrison Cornish, Jr., argued the cause for respondents (Messrs. Osborne, Cornish & Scheck, attorneys).
The opinion of the court was delivered by CLAPP, S.J.A.D.
Probate of the will of Everitt Kilburn Taylor was refused below, In re Taylor's Estate, 25 N.J. Super. 105 (Cty. Ct. 1953), and proponents appeal. The single question dealt with here is whether the signature of Mr. Taylor, affixed out of the witnesses' presence, was duly acknowledged.
The will was in Mr. Taylor's hand throughout, ending thus:
"In Witness Whereof I have hereunto set my hand and seal this seventeenth day of January, 1942.
 (L.S.)
The above Everitt Kilburn Taylor, having this seventeenth day of January, 1942, has (sic) made known to us the contents of this instrument, and declared it to be his last Will and Testament, and *222 signed and sealed it in our presence; we therefore, at his request, and in his presence, and in the presence of each other do hereby set our hands and seals as Witnesses hereunto.
Matthias R Mitten (L.S.)
172 Irvington Ave So. Orange, New Jersey
Dorothy H. Mitten (L.S.)
172 Irvington Ave. So. Orange N.J."
A will to be valid must be signed. N.J.S. 3A:3-2. Proponents argue that the name, Everitt Kilburn Taylor, appearing in the attestation clause in the third person and prefaced with the word "above," looking back, it might seem, to the blank space before the "L.S.," constitutes the signatory act required by the statute. In re Phelan's Estate, 82 N.J. Eq. 316 (Prerog. Ct. 1913), affirmed Phelan v. Phelan, 82 N.J. Eq. 647 (E. & A. 1913). At any event, proponents say the word "signed" in the attestation clause disposes of all reasonable doubts as to the problem. In the circumstances here, we may assume the will was signed, without deciding it.
A signature which, as here, was not written in the witnesses' presence, must be acknowledged in their presence. N.J.S. 3A:3-2. Was there, then, a proper acknowledgment? The court below held there was not, citing In re Sage, 90 N.J. Eq. 580 (E. & A. 1919). There the will was folded up so that the witnesses saw nothing except the place where they were to sign. The Court of Errors and Appeals decided that the testator's signature was not acknowledged, though in fact there was a publication of the will. Proponents in the present case claim that the signature of the testator appearing in the attestation clause was seen by the witnesses or at least visible to them, when they attested the will; and to make out their claim, proponents rely largely upon the fact that the witnesses' signatures are, respectively, three and four inches under the signature of Mr. Taylor. This requires an examination of the testimony.
The first witness, Mr. Mitten, testified, when asked whether the will was open so that he could see where he should sign: "No sir; it was folded up. All I saw is just *223 where I signed"; "* * * it was folded up * * * just about like that, because I saw nothing." The record unfortunately does not reveal the manner in which the paper was folded, as demonstrated by the witness. However, we do have the finding of Judge Conlon, the trial judge, that the paper was then "folded up so that the witnesses could see nothing but the portion where they were to sign" (25 N.J. Super., at page 108), and he, of course, saw this demonstration by Mr. Mitten. We must, upon a matter of this sort, rest our judgment heavily upon the finding of the trial court.
Mr. Mitten testified that he laid the paper on the table when he signed it. However, that does not aid proponents, for when asked whether the writing "was open on the table so you could see it," he repeated "just where I signed it  that is all."
The testimony of Mr. Mitten's wife was a little more loose. She said "we didn't see much of [the paper], because he [Mr. Taylor] held it. We saw but very little of it"; "we didn't read anything." This testimony must be interpreted in the light of what her husband had said; he a disinterested witness, reiterated and demonstrated that he could see no part of the paper except the place where he signed it. In our view the words "but very little of the paper," when looked at with his testimony, refer to that portion of the paper remaining open for inspection (as her husband demonstrated), after the paper had been folded. Her testimony is hardly to be construed as being at variance with his brief testimony just preceding hers. At any event her words do not create a reasonable doubt as to whether the testator's signature was visible to her husband as well as to herself.
But stress is put upon other testimony of Mrs. Mitten. When asked "But it was on the table so that you could have read [the will] if you wanted to," she answered, "Well I suppose so." From this reluctant answer and her assertion that she and her husband saw very little of the paper, we conclude she was merely confirming his testimony given at one point, namely, that her husband could have seen "this writing" "if" he had "opened the paper."
*224 Both witnesses testified that the testator in effect declared that the instrument was his will and wanted them to "sign" it. He did not use the word "witness," asking them to "witness" it.
The case is thus brought within the rule of In re Sage, 90 N.J. Eq. 580 (E. & A. 1919), supra. Neither there nor here was there proof or sufficient basis for an inference that the testator's signature was either seen by the witnesses or in sight, when they attested the will; nor did the testator in any way indicate that he had signed it. Upon this showing, the mere declaration by the testator that the instrument was his will cannot be held to be an acknowledgment of the signature. The cases in other jurisdictions are largely in accord. 127 A.L.R. 397. The reason for the rule is that a person publishing his will cannot be said to have acknowledged to the witnesses that the signature thereon is his, where the matter of a signature was not brought to their notice and the signature itself was not even visible.
Proponents urge upon us that the rule of In re Sage, supra, is to be limited to a situation where the proofs demonstrate that the testator did not want the witnesses to know whether or not he signed the will, and for that reason hid his signature. The rule of the case is not so narrow.
Those being our conclusions, we do not reach the question, with which we are pressed, whether a publication of a will, taken with circumstances indicating that the testator's signature was visible to the witnesses, constitutes a sufficient acknowledgment.
Nor do we reach the question, also insisted upon, whether the assertion in the attestation clause that the testator "signed" the will in the presence of the witnesses, an assertion which is concededly false here, can be made over so as to raise up a very strong presumption of a different matter, namely, that he acknowledged his signature in their presence. It is settled that there is a very strong presumption arising at any event when the attestation clause is "true" (Lacey v. Dobbs, 63 N.J. Eq. 325, 328 (E. & A. 1901)) and *225 complete (In re DuBois' Estate, 9 N.J. Super. 280 (App. Div. 1950)). But any such presumption is rebuttable (Bioren v. Nesler, 77 N.J. Eq. 560 (E. & A. 1910)), and if present here, the presumption is rebutted, for the proofs establish beyond any reasonable doubt that the testator did not properly acknowledge the signature as his own.
Proponents endeavor then to hang their argument upon some general theory that "substantial compliance with the statute" is sufficient, a theory heartily approved of by the Ordinary in Ludlow v. Ludlow, 35 N.J. Eq. 480 (Prerog. Ct. 1882); 68 C.J. 651. We need not pass on so wide a matter as that, but it may be remarked that in affirming the Ordinary, Ludlow v. Ludlow, 36 N.J. Eq. 597 (E. & A. 1883), the Court of Errors and Appeals laid it down, citing two cases of this State, that "the better and safer rule is to require a literal construction of the statute in regard to the publication." See In re Johnson's Estate, 115 N.J. Eq. 249 (Prerog. Ct. 1934); In re Amsden's Will, 121 N.J. Eq. 571, 574 (E. & A. 1937); Provident Institution for Savings v. Sisters of Poor of St. Francis, 87 N.J. Eq. 424 (Ch. 1917), affirmed Provident Institution for Savings v. Mead, 88 N.J. Eq. 349 (E. & A. 1917). Suffice it here to say that In re Sage, 90 N.J. Eq. 580, supra, settles the law on the precise point under examination.
Proponents say, too, that though the statute regulating the formalities for the making of a will has a salutary purpose, yet it should not be so read as to frustrate the desires of those not advised as to the law. Indeed one not so advised may easily trip in the execution of those formalities, and it would rather seem that the Legislature may have intended him therefore to look to counsel for assistance. The Legislature may have deemed  and with reason  that the interposition of a person schooled in those formalities and draftsmanship would serve, in part, to prevent mistakes in drafting the will. More than that, the presence, at the very moment of excution, of this third person of professional standing, may add to the safeguards which the statute has so rigorously thrown about the testamentary act in order *226 to forestall frauds by the living upon the dead. At all events these considerations may lend significance to what is looked upon by some as an almost ritualistic complexity in the formalities.
Affirmed.