Green v. Tulane.

ELLEN G. GREEN, executrix &c. of Caleb S. Green, deceased,

v.

PAUL M. TULANE et al., administrators of Paul Tulane, deceased, and FRANCES F. CLIFTON, executrix &c. of Marien Passage, deceased, and of Adelaide C. Clifton, deceased.

1. T. deposited with G. three coupon bonds, together with a paper signed by himself, as follows: "Having deposited in the hands of C. S. G. three $1,000 bonds of the State of New Jersey, I hereby authorize and direct him, in case of my death, to deliver said bonds to Miss M. P. and her sister, A. C., to be equally divided between them. Dated. May 15, 1873.   P. T."

2. The bonds matured January 1st, 1893.

3. G. collected the coupons during T.'s lifetime and paid the proceeds to T. After T.'s death (March, 1887) the bonds were claimed by T.'s personal representatives and by the ladies mentioned in the paper.

4. *Held*, that the latter were entitled.

---

Interpleader.    On final hearing on pleadings and oral proofs.

The pleadings and evidence disclosed the following facts: Paul Tulane, late of Princeton, was, in his lifetime, a friend and benefactor of two sisters, residents of the same town, Mrs. Adelaide C. Clifton and Miss Marien Passage, having, for years before his death, made them a yearly allowance in cash. On the 15th of May, 1873, he deposited with the late Honorable Caleb S. Green, of Trenton, three coupon bonds of the State of New Jersey, known as war bonds, of $1,000 each, payable to bearer and maturing on the 1st day of January, 1893, numbered, respectively, 20, 21 and 22, and at the same time handed to Judge Green a paper signed by himself, in these words:

"Having deposited in the hands of Caleb S. Green three $1,000 bonds of the State of New Jersey, I hereby authorize and direct him, in case of my death, to deliver said bonds to Miss Marien Passage and her sister, Adelaide Clifton, to be equally divided between them.   Dated May 15, 1873.   PAUL TULANE."

There is no evidence to show that, at the date of the deposit. Mr. Tulane was sick or in any peril or fear of immediate death,

During Mr. Tulane's lifetime, either Judge Green or his son, who was his law partner, cut the interest coupons from these bonds and paid the proceeds to Mr. Tulane. He died March 27th, 1887. The bonds still remained in Judge Green's hands and came into the hands of his executrix, the complainant, at his death, in 1891. Both Mrs. Adelaide Clifton and Miss Passage survived Mr. Tulane, but each died testate before Judge Green. The defendant Mrs. Frances F. Clifton was named executrix of the will of each. The administrators of Mr. Tulane, and Mrs. F. F. Clifton as executrix of Mrs. Adelaide Clifton and of Miss Passage, each claimed the bonds from Judge Green in his lifetime, and after his death, from his executrix, whereupon she filed her bill against them, praying that she might be permitted to deliver the bonds into the custody of the court and be discharged, and that the contending parties might interplead &c. The contestants answered, setting forth their respective claims, and the cause was brought to hearing at one time on all the issues. After hearing the evidence an order was made at once for the delivery into the custody of the court of these bonds, which was done, and the court took time to consider the rights of the defendants.

*Mr. William M. Lanning*, for the complainant.

*Mr. John F. Hageman, Sr.*, by brief, and *Mr. John F. Hageman, Jr.*, for Mrs. Clifton.

*Mr. Woodbury D. Holt*, for Tulane's administrators.

PITNEY, V. C.

The rules of law governing this case are well settled, and it seems to me that the result of their application is not open to doubt.

The case is one of gift pure and simple, and there is not a particle of consideration, either meritorious or valuable.

The simple question then is, was the gift so far completed by the unrevoked acts of the donor that it is considered in law to be complete?

The rule is well settled that, in order to make a perfect gift it must be, if a chattel, so far delivered, or, if real estate, so completely conveyed that the title vests in the donee without any aid from this court as against the donor or his or her heir or personal representative. If anything remains to be done in order to vest the title, so that the donor or his or her heir or personal representative must do some further act, then the gift is not complete.

This is so whether the gift be direct or by means of a trust either in a third person or in the donor himself. *1 Perry Trusts* §§ *96, 97, 98, 100.* In the section last cited, Mr. Perry says:

" If the donor or settlor propose to make a stranger the trustee of his property, and the property is a legal estate, capable of legal transfer and delivery, the trust is not perfectly created, unless the legal interest is actually transferred to or vested in the trustee. It is not enough that the settlor executed a paper purporting to pass it, if, in fact, the paper does not have that effect. The intention of the settlor to divest himself of the legal title must be consummated and executed, or the court will not enforce the trust."

And Lord Eldon, in *Ellison* v. *Ellison, 6 Ves. 662,* says : " I take the distinction to be, that if you want the assistance of the court to constitute you *cestui que trust,* and the instrument is *voluntary,* you shall not have that assistance for the purpose of constituting you *cestui que trust,* as upon a covenant to transfer stock &c., but if the party has completely transferred stock &c., though it is voluntary, yet the legal conveyance being effectually made, the equitable interest will be enforced by this court." And see *Lew. Trusts \*84.*

In this case the subject of the gift was negotiable bonds which passed by delivery. No writing or assignment on the part of the donor, or transfer on the books of the state, was necessary in order to transfer the title. When, therefore, Mr. Tulane delivered the bonds to Judge Green, he put it in his power to dispose of them and make title to them to anybody that he saw fit without any further act on the part of Mr. Tulane. The title at law

became vested in Judge Green. He obtained it by the voluntary act of the former owner of the bonds. This seems clear enough. The only question is, for whom did Judge Green hold them? He never made any claim to them on his own account, nor does his executrix, and I do not see how the administrators of Tulane can make any claim to them in the absence of some paper signed by Judge Green, or other proof that he held them in trust for Mr. Tulane. It may be suggested that the fact that he paid Mr. Tulane the interest which accrued upon them up to his death is evidence that he did hold them in trust for him. I think that is true, so far as concerns the interest accruing up to that time, but in a matter of trust it is easy enough to separate the principal from the interest, and the mere fact that he paid the interest to Mr. Tulane goes no farther than to show *prima facie* that he held the bonds for his benefit during his lifetime. But then Mr. Tulane has himself declared in writing who were to be the *cestuis que trust* of the bonds at and after his death. He has said that they were to go to Mrs. Clifton and Miss Passage, and he has directed that the holder of the legal title and the actual possessor of the bonds should deliver them to those ladies to be shared between them equally, and that paper he never revoked. It is not necessary now to determine whether he could have done so at any time after notice had been given to the beneficiaries in remainder of the gift and they had formally accepted it. It is enough to say that nothing of the kind was done, and Paul Tulane died without having resumed possession of the bonds, or having revoked his direction in writing that they should be delivered to the beneficiaries named. The result is that the gift was a complete one, and Mrs. Clifton is entitled to the subject of it.

The only ground upon which I can conceive that the gift can be attacked is that it was testamentary in its nature. By the terms of the declaration of trust, if it be viewed in that light, the bonds were to be delivered to the beneficiaries " in case of my death." Inasmuch as death is a certain event, that was tantamount to saying " at my death." Admitting that the result was a reservation by implication of a life estate to the donor,

I am still unable to perceive how it follows that the gift must, under the circumstances, be treated as testamentary in its character. It is quite competent for one to make a settlement on another *in præsenti*, reserving a life estate to himself, without bringing the affair within the definition of a testamentary disposition or of a gift *causa mortis*. The authorities in support of this position are numerous.

In *Moore* v. *Darton, 4 De G. & S. 517; 20 L. J. (N. S.) Ch. 626*, a Miss Darton loaned to Moore (the plaintiff) £100, and he signed the following document:

"Received of Miss Darton, for the use of Ann Dye, £100, to be paid to her at Miss Darton's decease, but the interest, at four per cent., to be paid to Miss Darton."

Underneath was written, "I approve the above. Betty Darton." This document was given to Miss Darton. The money was not paid to her in her lifetime. After Miss Darton's death, it was held by Vice-Chancellor Knight Bruce that Moore was a trustee for Ann Dye, for £100. He said: "The consequence is that Mr. Moore having received this money, became trustee of it for the use of Miss Darton for life, and, subject to her life interest, for the use of Ann Dye, whom I think entitled accordingly."

*Stone* v. *Hackett et al., 12 Gray 227*, was, like this, a bill of interpleader. The plaintiff had received from Dr. Kittredge several shares of stocks in different railroads and had signed a memorandum to the effect that the said several shares were purchased with the money of Dr. Kittredge and (at *p. 228*) "are in my hands in trust for the following purposes and uses, that is to say, the income and dividends on said several shares are to be paid to the said Kittredge during his lifetime." At his decease they were to be divided among various charitable institutions. And then it adds, "said Kittredge retaining the right to modify said uses or to revoke said trust." And it was held that the charitable beneficiaries were entitled. After showing that the gift was complete, the learned judge who spoke for the court proceeds (at *p. 232*): "Nor are we able to see any force in the

suggestion that the trust which the donor created in some of its features looked to a disposition of the property which was the subject of the gift after his death. We know of no principle of law which renders such a transfer of property *inter vivos* invalid. The entire *jus disponendi* was in the donor. Perhaps if there were any facts to show that the transaction was intended to be testamentary in its character, and was entered into for the purpose of evading the provision of law regulating the execution of last wills and testaments, there might be some ground for impeaching the validity of the conveyance and withholding the sanction of the court from the trusts which the donor intended to establish. But it is not necessary to determine this question, because there is no evidence from which any such intent on the part of the donor in the present case can be inferred."

In *Dickerson's Appeal, 115 Pa. St. 198,* the decedent, by declarations in writing signed by himself and placed with the securities, and by having the bonds registered on the books of the company in his name as trustee for his children, there constituted himself a trustee of certain negotiable bonds, of which he retained the possession and which were found among his papers after his death. It was held that the trust must be enforced, though he retained the actual use of the income during his lifetime.

*Barlow* v. *Loomis et al.,* decided by Judge Wheeler in the United States circuit court for the district of Vermont (*19 Fed. Rep. 677*), was this: The testator, on three several occasions, delivered and transferred to the defendant Loomis certain stocks and bonds, and in each case took written declarations from Loomis, in two of them providing that Loomis should hold the stocks and bonds in trust to pay the interest and dividends to the testator during his lifetime, and at his decease to transfer them to the other defendants in the cause; and in the third case, that Loomis should hold the bonds for the benefit of the other defendants at the death of the testator, the testator reserving the right to demand and have the income while he should live, and to revoke the trust altogether and have the bonds returned

to him if he should so elect. Loomis paid the income to testator during his life; he did not revoke the trust, but died leaving the stocks and bonds in the possession of Loomis. The bill was brought to have the stocks and bonds brought into the assets of the estate, so that the complainant, who was the residuary legatee, might have the benefit of them. Judge Wheeler said: "The sole inquiry is as to the effect of what he [the testator] did. He could control the disposition of his estate after his death only by will, executed according to the statute of wills, but he could divest himself of this property during life by mere delivery and transfer, such as he fully accomplished. Had there been no reservations there could have been no question. But these reservations were all optional and personal to himself. If he did not exercise his right to them they were gone. He died without exercising the right, and it expired with him, leaving the property absolutely gone out of his estate and wholly beyond the complainant's rights."

In *Clough* v. *Clough, 117 Mass. 83*, decedent handed to his brother, the defendant, $800, of which he had repaid him in his lifetime $400, and as to the balance, set up that it had been given to him by his brother, the decedent, in trust for his minor son, with instructions to invest and hold the same till the son should be twenty-one years old, and then to pay the same to him with all accumulations. The plaintiff requested the judge to instruct the jury,

"that if they found that the deceased directed the defendant, *in case he died*, to keep the money and give it to the child if he lived to be twenty-one years of age, and if he did not, to divide it between the mother and sister of the deceased, that would not be, in law, a gift to the child, mother or sister, and that such a disposition could only be made by will,"

which the judge declined to do. There was a verdict for the defendant, and that verdict was sustained.

In *Davis* v. *Ney, 125 Mass. 590*, the deceased, Mary Ney, a depositor in a savings bank, delivered her bank-books, accompanied by an assignment of her deposits, to one Emery, upon the oral agreement that he should draw for her what money she

wanted during her lifetime and pay the balance, if any, left at her death to her son. In pursuance of this agreement, Emery paid Mary Ney certain sums of money before her death, and the balance remaining after her death he paid to her son, who was appointed executor of her will. The court said : " The delivery of the bank-books to Emery, accompanied by an assignment, constituted a valid gift, and gave to him a complete title in the fund represented by the books. In form, the conveyance to Emery was absolute ; but it appears from the statement of facts that it was accompanied by an oral agreement between Mrs. Ney and Emery that he should pay her during her life such sums as she wanted, and that upon her death he should pay over the balance to her son. The appellant contends that this was not a complete gift; that it was an attempt to evade the statute of wills, and that the transaction was a mere form, the nominal title being in Emery, and the real ownership and possession being in Mrs. Ney." And, further on : " It does not appear, upon the case stated, that it was the intent of Mrs. Ney to make a disposition of this property in its nature testamentary," and held that the son was entitled to it.

This ruling was followed in *Gerrish* v. *New Bedford Savings Institution, 128 Mass. 159.* At *p. 163* the judge says : " In the case at bar the claimants offered to prove declarations of the testator made to them at different times in language which fairly implied that he intended to give to them an immediate equitable title in the principal fund, reserving only the income for life. These declarations define the nature of the trust assumed, and show that a testamentary disposition of the property was not intended."

In *Gilman* v. *McArdle, 99 N. Y. 451,* a married woman placed in the hands of McArdle a sum of money, with directions to hold it for the support and maintenance of herself and her husband as long as they lived, and after the death of the survivor of them to use the residue to pay their funeral expenses, the erection of suitable monuments to their memories, and to expend the amount remaining in his hands after such payments for Roman Catholic masses to be said for the repose of the souls of

Green *v.* Tulane.

herself and her husband.   Both the wife and husband died, and there was a considerable balance left in the hands of McArdle, and this suit was brought by the administrator of the original donor to recover it.    Judge Rapallo, in his opinion (at *p. 459*), uses this language : " The learned judge who rendered the judgment in the present .case expressed the opinion that the disposition in question would have created a valid trust if contained in a will, though not valid, under the circumstances of this case, as a disposition *inter vivos ;* but it seems to us that any trust of property which would be valid if created by will, can be created by the owner of the property in his lifetime, provided it is then to go into operation, although it is to be executed after his death ; and that in the case of money or personal property, it may be created by oral agreement, accompanied by a transfer or delivery of the property, and that such delivery will pass the title to the property, and that as a trust its validity is to be tested by the same rules, whether it be created by will or by contract *inter vivos."*

Other authorities in the same direction were cited in the elaborate and valuable briefs of the counsel for Mrs. Clifton, but the foregoing suffice.

I will advise a decree in favor of Mrs. Clifton, and that the administrators of Tulane pay the costs of this suit, including the amount of costs paid to the complainant, all of which have been incurred by their unwarranted demand upon the complainant for the possession of these bonds.