AMERICAN WOOLEN COMPANY v. EDWARD I. EDWARDS, COMPTROLLER, AND THOMAS F. MARTIN, SECRETARY.

Argued July 15, 1916—Decided July 27, 1916.

1. Under the supplement to the act concerning corporations, approved March 23d, 1900 (*Pamph. L., p.* 316; *Comp. Stat., p.* 1620, § 31*a*), no corporation organized under the laws of this state can be dissolved until all taxes levied upon or assessed against the corporation by the state shall have been paid. The connection of the words "levied" and "assessed," by the conjunctive "or," indicate that two different acts were meant, therefore, taxes levied, although not yet assessed, must be paid before the corporation can be dissolved.

2. The annual corporation license fee or corporation tax cannot be said to be assessed until the state board has ascertained the amount of the tax and certified it to the comptroller, pursuant to *Comp. Stat., p.* 5291, *pl.* 505.

3. Where words used in a statute have been interpreted by the Supreme Court of the state more than two years before the passage of the act, the words so used must be assumed to have been used with the judicial definition in mind.

4. The corporation license fee, or franchise tax, provided for in *Comp. Stat., p.* 5288, *pl.* 504, is called by the legislature an annual license fee, which suggests a payment in advance. Under

the statute, the levy is completed and the year for which the tax is paid begins on the first Tuesday in May, that being the date fixed for the return by the corporation to the state board, which latter body has merely to calculate the amount of the tax based upon such return, except where the corporation neglects or refuses to make a return.

5. Upon the dissolution of a corporation, the secretary of state is not required to issue a certificate of dissolution unless the certificate of the comptroller that the state taxes have been paid has been filed with him, pursuant to the provisions of the act of 1900 (*Comp. Stat.*, p. 1620, § 31*a*).

On *mandamus*, return and plea thereto.

Before Justice SWAYZE, sitting for the court by consent of counsel.

For the relator, *Lindabury, Depue & Faulks.*

For the comptroller and the secretary of state, *John W. Wescott*, attorney-general.

SWAYZE, J. I am somewhat embarrassed by the form of the issues arising on the plea, but inasmuch as the case was argued by counsel on the substantial merits, and it was stipulated that the facts be tried before me without a jury, I disregard the various issues raised by the plea. The real issue is whether all taxes levied upon or assessed against the relator by the State of New Jersey in accordance with the Corporation Tax act of 1884 were fully paid. I find that they were not. I base this finding upon my construction of the act to be hereafter stated. Before I deal with the main question, I may premise that I attribute no force to the action of the secretary of the board at the time the relator demanded the certificate of the comptroller, nor to the action of the members of the state board or to the board itself thereafter. Unless the refusal of the comptroller to issue the certificate was justified by the situation at the very instant of the demand by the relator, I think it cannot be justified by what happened thereafter

The real question in the case is whether the tax was levied or assessed at the time the relator made its demand on the comptroller for a certificate that the taxes were paid. The statute to be construed is the act of 1900. *Pamph. L., p.* 316; *Comp. Stat., p.* 1620, *pl.* 31a. It enacts that no corporation shall be dissolved by its stockholders until all taxes levied upon or assessed against such corporation shall have been fully paid. Two situations were contemplated by the legislature, one where taxes had been levied, and another where they had actually been assessed. I think it clear that these taxes cannot be said to be assessed until the state board has acted, ascertained the amount and certified it to the comptroller, pursuant to section 5 of the act. *Comp. Stat., p.* 5291, *pl.* 505. I have with some hesitation reached the conclusion that the taxes may, within the contemplation of the legislature at the time of the act of 1900, be said to have been levied before the assessment. The use of both words, "levied" and "assessed," connected by the conjunction *or* indicates that two different acts were meant; otherwise, the word "assessed" alone would have sufficed. Although levied and assessed are not always used in our statutes with nice distinction as to the difference of meaning, and the conjunction *or* might conceivably be used to connect synonymous words, I think that construction is not permissible in the present case. A little more than two years before the act of 1900 was passed, the Court of Errors and Appeals, in the very important case of *Township of Bernards* v. *Allen,* 61 *N. J. L.* 228, 238, had sharply drawn attention to the distinction between the levy and the assessment of taxes, and had said that the levy was a legislative function, the assessment mere machinery to effectuate the legislative purpose. We must assume that thereafter the words were used in our statutes with this judicial definition in view. It is notable that the statutes cited in the relator's brief all antedate the decision in Township of Bernards v. Allen. The latest, that of 1897 (*Comp. Stat., p.* 5293, *pl.* 510), itself seems to make a distinction between the levy and assessment and originally required the appeal to be

made within three months from the latter only, a limitation now extended to four months. *Pamph. L.* 1916, *p.* 25.

These considerations, however, are far from conclusive, since it may well be contended that there is no levy until the amount is ascertained (*Hohenstatt* v. *Bridgeton*, 62 *N. J. L.* 169), and the real question for solution is when the levy may be said to be completed. In determining this question, the important consideration is that the payment required of the corporation is called by the legislature an annual license fee. *Comp. Stat., p.* 5288, *pl.* 504. The word "annual" points to a year, and following the analogy of the act relative to statutes (*Comp. Stat., p.* 4973, *pl.* 10), perhaps a calendar year. Calling it a license fee suggests a payment in advance, since a government which seeks to derive a revenue from license fees, naturally makes the payment of this fee a condition precedent. The statute does not, however, require payment in advance at the beginning of the year, but only in June after the ascertainment of the amount. By analogy to the rule as to property taxes, this would indicate that the liability to payment depends on the situation at the time the amount is certified to the comptroller. *Jersey City* v. *Montville*, 84 *N. J. L.* 43; *affirmed*, 85 *Id.* 372. The argument is a strong one, and I should be inclined to accede to it, but for the fact that I cannot believe that the legislature meant to leave open the door for a corporation to do business for five months of the calendar year without liability to the license tax—yet that would be the result since there is no provision for apportionment. The legislature by enacting the act of 1900 evinced a design to save the state against possible loss of these license fees or taxes that might arise from dissolution during the year. I ought not to adopt a construction that would often thwart that intent.

I have said that the word "annual," in connection with these license fees by analogy with the statutory construction of the word "year," perhaps points to a calendar year. Other considerations lead me to think that is not the proper construction. When the act was originally passed no date was fixed as that on which the capital stock was to form the basis

of the tax. This court held that the date must be that on which the statute took effect—April 18th. We said that the 18th day of April in each year marks the beginning of the yearly period for which the fee or tax is charged, and the day on which the amount of the capital stock must be taken to form the basis of computation. *Brewing Improvement Co.* v. *Board of Assessors,* 65 *N. J. L.* 466. Subsequently, the omission in the original act was supplied, and the 1st day of January preceding was fixed as the time when the amount of the capital stock should be ascertained; and the first Tuesday of May fixed as the time for the annual return. *Pamph. L.* 1901, *p.* 31; *Pamph. L.* 1906, *p.* 31; *Comp. Stat., p.* 5295, *pl.* 519. The act of 1901 (the amendment of 1906 is unimportant for the present purpose) came before the court in *Hardin* v. *Morgan, Comptroller,* 70 *N. J. L.* 484; *affirmed,* 71 *Id.* 342, and it was held that the first Tuesday of May took the place of April 18th. I incline, therefore, to hold that the year for which the license fee is paid begins with the first Tuesday in May. On that day it is in most cases easy to ascertain by a mere arithmetical calculation the amount of the license fee or franchise tax, at the rate fixed by the legislature, and I see no difficulty in holding that the levy is made as of that date. The statute does not contemplate anything more than a mere calculation by the state board except in cases where the corporation neglects or refuses to make a return. Section 3 of the act *(Comp. Stat., p.* 5287, *pl.* 503) authorizes the board to fix the amount only in that case. Section 5 *(Comp. Stat., p.* 5291, *pl.* 505) makes a distinction between cases where the company makes a return and cases where the board ascertains the facts. It requires the board to certify and report to the comptroller a statement of the basis of the annual license fee or franchise tax (1) as returned by each company or (2) ascertained by the board. There seems to be no provision for a review by the board where the company has made a return. Probably, the penalty of perjury as provided by section 3 was considered sufficient to secure an honest return.

There is an obvious advantage in adopting the first Tuesday of May as the beginning of the year for which the license fee is paid. It reduces to a single month the time between the date of the return and the date when the tax becomes payable, and assimilates the tax year in the case of miscellaneous corporations to the tax year in the case of other corporations under section 2 (*Comp. Stat.*, p. 5287, *pl.* 502), and in a sense to the time of assessment of general property taxes. The obvious advantage would be of no weight if clear language to the contrary were used in the statute; but when we are seeking for the legislative meaning, it has weight.

It was urged that the decision in *State* v. *United New Jersey Railroad and Canal Co.*, 76 *N. J. L.* 72, supports the relator. But the construction of the word "imposed," in that case, depended upon the peculiar facts of the case and the certainty that the legislature meant the payment of taxes by the railroad company to be continuous. The reasoning was similar to the reasoning adopted in this opinion.

There must be judgment for the defendant.

As the case may be taken to the Court of Errors and Appeals, I ought to call attention to two clerical errors. The writ refers to section 152 of the Corporation act of 1896. There is no such section. The reference should be to the act of 1900, which is printed in the compiled statutes as *placilum* 31a of the Corporation act. I imagine the error may have arisen from using one of the compilations of the Corporation act where arbitrary numbers are given to sections taken from different acts. In the return the secretary of state justifies under chapter 254 of the laws of 1893. This was repealed by the Corporation act of 1896. These errors should be amended. Whether counsel will think it desirable to amend the plea so as to present a single issue is a question for them to determine.

If I had reached the conclusion that the merits were with the relator, I should have had difficulty in seeing how a *mandamus* could go against the secretary of state. He was not required to issue a certificate of dissolution unless the certificate of the comptroller was filed with him.