THE HOWARD SAVINGS INSTITUTION, EXECUTOR AND TRUSTEE UNDER THE LAST WILL AND TESTAMENT OF EVA KIELB, DECEASED, PLAINTIFF-RESPONDENT, v. WALTER KIELB, JR. (LEE S. WILSON, ADMINISTRATOR *C. T. A.* OF THE LAST WILL AND TESTAMENT OF WALTER KIELB, JR., DECEASED), DEFENDANT-APPELLANT, AND SOPHIA RZOCSOC, *ET AL.*, DEFENDANTS-RESPONDENTS.

Argued November 21, 1961—Reargued June 4, 1962— Decided June 29, 1962.

*Mr. Herbert D. Kelleher* argued the cause for the estate of Walter Kielb, Jr., defendant-appellant (*Messrs. Lum, Biunno & Tompkins,* attorneys).

*Mr. David Weinick* argued the cause for plaintiff-respondent (*Mr. Francis J. Tansey* and *Mr. David Weinick,* attorneys).

*Mr. George C. Witte, Jr.,* argued the cause for defendants-respondents Sophia Rzocsoc, *et als.* (*Messrs. McCarter & English,* attorneys).

*Mr. George Warren,* guardian *ad litem* for Blanche Mytych, defendant-respondent, argued the cause *pro se.*

*Mr. Israel Spicer* argued the cause for New Jersey Bankers Association, *amicus curiae* (*Mr. J. Fisher Anderson,* attorney).

The opinion of the court was delivered by
HANEMAN, J. Appeal is herein taken from a judgment of the Superior Court, Chancery Division, declaring that certain bank accounts in the form "Eva Kielb in trust for Walter Kielb, Jr." vested no ownership in the named beneficiary upon the depositor-trustee's death but, on the contrary, were to be administered as part of the depositor-trustee's estate.

The controversy originated in an application by The Howard Savings Institution for a construction of the will of one Eva Kielb under which will plaintiff had qualified as executor and trustee. Testatrix died November 2, 1957 and her will had been executed April 2, 1948.

During her life testatrix had opened four bank accounts bearing the designation "Eva Kielb in trust for Walter Kielb, Jr." Walter was her only child and was one of the original defendants in this action. The first of these accounts was opened October 1931 and carried at testatrix's death a balance of $10,226.69. Numerous deposits in and withdrawals from this account had been made by her. Subsequently, in November 1946, she opened another account from which she made no withdrawals and in which $6,196.78 had accumulated at her demise. A third account in the amount of $6,090.00 at the time of her death was opened during April 1948, on the same day her will was executed. From this account one withdrawal had been made. The fourth account bore an opening date in November 1950, and contained at testatrix's death $7,415.20. No withdrawals from this account are evidenced by the passbook.

Additionally, when testatrix died she owned an account in her own name bearing a balance of $2,270.00, bonds valued at $5,700.00 and realty to the extent of $21,000.00.

The moneys deposited in the trust accounts had belonged solely to Eva Kielb, Walter being unaware of their existence, and she at all times retained possession and control of the passbooks relating to such accounts.

Testatrix's will, after providing an absolute bequest of $2,000 for Walter, established a residuary trust, income to Walter for ten years and thereafter the *corpus* and accumulations to be paid to him absolutely. Walter, in fact, died without issue in 1960 during the pendency of this action and his administrator *c. t. a.* was substituted as a party defendant. In the mother's will, provision had been made for his death without issue within the ten year period, the *corpus* in such case to be paid over to designated remainder-

men, defendants herein, one of whom, Blanche Mytych, a minor, is represented by her guardian *ad litem*.

The Chancery Division, echoing the principles enunciated in a line of New Jersey cases spanning half a century, held that the accounts opened in trust form were ineffective to vest Walter with any interest in the proceeds contained therein and hence the funds comprised part of Eva Kielb's estate, to be distributed according to the terms of her will. 66 *N. J. Super.* 98 (*Ch. Div.* 1961). Walter appealed to the Appellate Division. Prior to argument there we certified the matter on motion.

Walter, and now his personal representative, concedes the correctness of the lower court's interpretation of the prior case law on the subject, attack being directed instead upon the validity of the premise established by those decisions. For ease in treatment the accounts will be considered in the chronological order of their opening.

I.

In existence at the time the 1931 account was opened were two statutory enactments relating to deposits in trust form. The first related solely to trust companies and stated, in part:

"Whenever any deposit shall be made by any person in trust for another, and no other or further notice of a legal and valid trust shall have been given to the trust company, in the event of the death of the trustee, the same or any part thereof, together with the dividends or interest thereon, may be paid to the person for whom the said deposit was made, or to his or her legal representatives; * * *." *L.* 1903, *c.* 210, § 1.

Next the Legislature enacted a provision couched in almost identical terms, dealing with similar accounts opened in savings banks:

"* * * whenever any deposit shall be made by any person in trust for another, and no other or further notice of the existence and terms of a legal and valid trust shall have been given in writing to

the bank, in the event of the death of the trustee, the same or any part thereof, together with the dividends or interest thereon, may be paid to the person for whom the said deposit was made, or to his legal representatives; * * *." *L.* 1906, *c.* 195, § 26.

During the interval between the enactment of the above statutes the case of *Nicklas v. Parker,* 69 *N. J. Eq.* 743 (*Ch.* 1905), was decided and, following enactment of the 1906 legislation, that judgment was affirmed on the opinion below. 71 *N. J. Eq.* 777 (*E. & A.* 1907). The issue there presented was whether a deposit in trust form, made in a savings bank, vested an estate in the named beneficiary sufficient to entitle such *cestui* to 'the funds remaining therein at the depositor-trustee's death. The lower court made no mention of the 1903 statute, apparently because the account in question had been opened in a savings bank. Instead, the court decided the case on classic trust and gift principles, holding that where the depositor retained control of the passbook and made withdrawals from the account, there could not be that surrender of dominion by the owner essential to the existence of a valid *inter vivos* gift or trust. And if the gift were intended to become operative only at the death of the donor, it was equally ineffective because violative of the Statute of Wills. Expressly rejected in this opinion was the contemporary decision of the New York courts in *Matter of Totten,* 179 *N. Y.* 112, 71 *N. E.* 748 (*Ct. App.* 1904), which had first extended judicial recognition to the "tentative trust."

In 1930 the issues generated by the aforementioned statutes were squarely presented and dealt with in *Jefferson Trust Co. v. Hoboken Trust Co.,* 107 *N. J. Eq.* 310 (*Ch.* 1930). In assaying the effect of the 1903 legislation upon an account in trust form opened in a trust company it was there held that the statute was designed only to protect the trust company should it pay over the moneys so deposited to the named beneficiary. No other independent effect could be given the statute, it was held, because the retention of control by the depositor-trustee, evidenced by her possession of the

passbook and by her withdrawal of funds, negated the existence of a valid *inter vivos* gift or trust. *Nicklas v. Parker, supra,* was cited as authority for this result.

No other legislation having been enacted prior to the opening of the 1931 account by Eva Kielb, it would appear at first blush that we are now faced with the decision of whether to adopt or reject the rules of law laid down in the aforementioned cases. Examination of subsequent legislation, however, reveals that our choice is not so restricted. In 1932, four statutes relating to accounts in trust form were enacted. (*L.* 1932, *ch.* 40–43). *Chapters* 41 and 43 were enacted as amendments and *Chapter* 42 was enacted as a supplement to already existing legislation whereas *Chapter* 40 represented completely new legislation. All the chapters were substantially identical to the following portion of *Chapter* 40:

"Whenever any deposit *shall have been made* with any savings bank, trust company, or bank by any person in trust for another, and no other or further notice of the existence and terms of a legal and valid trust shall have been given in writing to the savings bank, trust company or bank, in the event of the death of the trustee, the same or any part thereof, together with the dividends or interest thereon *shall be paid* to the person in trust for whom the said deposit was made, or to his or her legal representatives and the legal representatives of the deceased trustee shall not be entitled to the funds so deposited nor to the dividends or interest thereon notwithstanding that the funds so deposited may have been the property of the trustee; * * *." *L.* 1932, *c.* 40, § 2. (Emphasis supplied)

It is to be noted first, that this section by its terms related to deposits in accounts opened prior to its enactment and, second, that payment of the funds remaining in such account at the death of the depositor-trustee—permissive in the 1903 and 1906 legislation—was therein made mandatory.

We are not unmindful of the judicial reluctance to attribute retrospective effect to statutory enactments. However, where the Legislature indicates an intent to so apply the law we must treat it in conformance with that intent.

*In re Smigelski,* 30 *N. J.* 513 (1959); *La Parre v. Y. M. C. A. of the Oranges,* 30 *N. J.* 225 (1959). See *In re Glen Rock,* 25 *N. J.* 241 (1957). That such intent was manifested here becomes clear upon further examination of the statutes. Each contains at least two paragraphs or sections couched in almost identical language, the sole variance being that in the first occurring paragraph or section of each the phrase "shall be made" is used whereas the next following paragraph or section employs the phrase "shall have been made." (See, *e. g.,* underlined portion of *L.* 1932, *c.* 40, § 2, *supra.*) Obviously the intent of the Legislature, as thereby evidenced, was to affect deposits made in trust accounts prior to the enactment of the law. To attribute this restrospective effect to the statute does not appear to run afoul of any constitutional prohibition because the statute, by its terms, did not operate to destroy any vested rights, depositor-trustees still having the power to change the name of the account or to withdraw the funds if they so wished. Naturally, the statute could not apply to accounts opened previously by trustees who had died before its passage where such funds had already been delivered to the trustees' estates because under the law as declared by *Nicklas v. Parker, supra,* and *Jefferson Trust Co. v. Hoboken Trust Co., supra,* title to such accounts, once it was determined that there had been no relinquishment of the beneficial ownership, lay in the trustees' estates. The divesting by statute of title so vested would clearly be unconstitutional. See 2 *Sutherland, Statutory Construction* (3d ed. 1943), §§ 2201, 2205. That result, however, does not seem demanded by the enactment under examination.

As to the above noted second characteristic of the 1932 legislation, the direction to financial institutions holding such accounts is clear. The funds so held "shall be paid" to the beneficiary who survives the depositor-trustee. Attributing to these words their full import and, cognizant of the contextual use made of them within the statute, we are of the opinion that the Legislature intended to fully

effectuate the donative intent expressed by depositors in maintaining accounts in trust form.

If clarification or amplification of legislative purpose is deemed necessary, the statements appended to the bills before passage furnish ample evidence of that intent as well as of the circumstances which occasioned the statutes. Representative of the statements attached to all bills in this series is the following which accompanied *L*. 1932, *c*. 40, heretofore quoted in part:

"Under the decisions of the State of New Jersey, construing statutes relating to savings banks and trust companies similar to the above statute, the funds which are deposited in banks by trustees for others where there is no evidence of the trust except the form of the account are awarded by the courts to the estate of the deceased trustees instead of to the persons in trust for whom the accounts were opened, unless the persons in trust for whom the accounts were opened are able to clearly prove by other evidence a gift of the money or a trust of the money and the intentions of the trustees opening such accounts have thus been frustrated. The above bill will make these accounts payable to the persons for whom they were opened and the estate of the deceased trustee will not receive the money. Companion bills amending the trust company act and savings bank act and supplementing the State bank act have been introduced to accomplish the same object. This bill is introduced so that if the courts should hold the amendments to the trust company act and the savings bank act and the supplement to the State bank act unconstitutional the object will nevertheless be accomplished by this bill." *Senate, No*. 124, 1932.

Statements appended to bills are useful aids in ascertaining legislative intent, although a considered judgment as to the weight to be accorded them must be exercised. *Morris & Essex Invest. Co. v. Director of Div. of Taxation,* 33 *N. J*. 24 (1960). Mindful of this cautionary rule, we have no difficulty in holding that the Legislature in enacting these statutes sought to create a substantive property right in the named beneficiary of a bank account in trust form. These statutes, as can be judged from the above-quoted statement, represented legislative reaction to the judicial action invalidating intended gifts by depositor-trustees.

We must consider one more stage in this action-reaction sequence before full determination of the effect to be given the account opened by Eva Kielb in 1931 can be made. The statutes passed in 1932 were, in 1937, incorporated into *R. S.* 17:9-4 which stated in pertinent part:

"When a deposit has been or shall be made in a bank, savings bank or trust company by a person in trust for another, and no other or further notice of the existence and terms of a legal and valid trust has been given in writing to the bank, savings bank or trust company, in the event of the death of the trustee, the same or any part thereof, together with the dividends or interest thereon, shall be paid to the person in trust for whom the deposit was made, or to his legal representative and the legal representative of the deceased trustee shall not be entitled to the funds so deposited nor to the dividends or interest thereon notwithstanding that the funds so deposited may have been the property of the trustee."

We perceive no difference between this enactment and its predecessor statutes sufficient to alter the intent or effect we have already attributed to the earlier legislation. At variance with our present conclusion, however, is the opinion in *Bendix v. Hudson County National Bank,* 142 *N. J. Eq.* 487 (*E. & A.* 1948). The court there declared that *R. S.* 17:9-4 served only to create a rebuttable presumption of the existence of a gift or trust from the form of the account, that the statute created a rule of evidence rather than substantive law and that the presumption was rebutted where no cleavage of legal and equitable title in the account was shown. Unless a depositor divested himself completely of control over the account, opined the court, there could exist no basis for a finding of a gift or trust. The result of this failure to effect a valid *inter vivos* gift or trust, it was held, rendered the attempted disposition testamentary in nature and therefore nugatory because violative of the Statute of Wills. Thus the law under this decision, and in spite of the legislative efforts to the contrary, stood at a position not unlike that it had occupied at the time *Nicklas v. Parker, supra,* was decided. For

the reasons already discussed we reject this construction of the statute.

■ Since, as will be discussed more fully later, subsequent legislation on this subject enacted in 1948 and 1949 was expressly limited so as to affect only accounts opened on or after those dates, we conclude that the 1931 account is governed by *R. S.* 17:9–4. The effect of that statute is to create in the named beneficiary of a trust account an inchoate right to such fund, a right subject to being defeated *pro tanto* by withdrawals made by the depositor-trustee during his lifetime. At the prior death of the depositor-trustee this right becomes consummate to so much of said fund as remains. Walter, therefore, became entitled, at the death of his mother, to the proceeds of the 1931 account in trust.

## II.

■ The Banking Act of 1948 (*L.* 1948, *c.* 67), by section 336A(12), (*N. J. S. A.* 17:9A–336A(12)), repealed *R. S.* 17:9–4 and in its place substituted *N. J. S. A.* 17:9A–216. Although the act became effective September 16, 1948 (*N. J. S. A.* 17:9A–343) the provisions of *N. J. S. A.* 17:9A–216 were expressly limited in their application to accounts opened after its effective date. The disposition of the accounts opened by Eva Kielb in November 1946 and April 1948 is thereby governed by *R. S.* 17:9–4. Accordingly, we hold under the interpretation of that statute just adopted that title to those accounts also vested in Walter at his mother's death.

## III.

There remains to be considered the disposition of the account opened November 1950. At that time the 1948 version of *N. J. S. A.* 17:9A–216 had been amended (*L.* 1949, *c.* 286, § 2). As amended the statute applied

to all accounts opened after May 28, 1949 (*N. J. S. A.*
17:9A–216, *subd. E*), hence, to the above named account.

Its pertinent provisions were as follows:

"17:9A–216. Deposits by one person in trust for another

A. A banking institution may accept demand or time deposits
in the name of an individual depositor as trustee or in trust for a
named beneficiary. The depositor, by making such deposits, shall
conclusively be presumed to intend to declare and create a trust of
such deposits and of any credits of interest, for the beneficiary,
with the depositor as trustee, upon the following terms:

(1) the trust shall be revocable by the trustee at will, during
the life of the beneficiary, but only by and to the extent of with-
drawals by the trustee of funds of the trust during the trustee's
life, as to which withdrawals no notice to or consent of the bene-
ficiary shall be required.

(2) * * *

(3) if the beneficiary survives the trustee, the trustee's death
shall terminate the trust and any funds then to the credit of the
trust and any interest credits shall vest indefeasibly in the beneficiary,
notwithstanding any one or more of the following, viz.: declara-
tions by the trustee as to his intention in declaring, creating and
maintaining the trust or as to the terms of the trust or other evidence
contrary to the trustee's conclusively presumed intention, retention
of control by the trustee over the evidence of and the funds of the
trust, personal use by the trustee of the funds of the trust, lack of
notice by the trustee to the beneficiary as to the creation and
maintenance of the trust, any attempted testamentary disposition by
the trustee of funds of the trust, or any other attempted disposition
by the trustee of funds of the trust by gift, assignment, pledge or
otherwise; * * *."

It is apparent that the phrasing of this statute in terms
of conclusive presumption was calculated to overcome the
judicial interpretation of a rebuttable presumption given
*R. S.* 17:9–4 in *Bendix v. Hudson County National Bank,
supra.* Significantly, the original N. J. S. A. 17:9A–216
was similar to *R. S.* 17:9–4 which it replaced. The date
of passage of The Banking Act containing the new statute
was April 1948 and the decision in *Bendix, supra,* followed
less than a month later. Thereafter, the Legislature in
its next session amended the judicially emasculated statute
and endeavored to supply thereby the nostrum apparently
called for by the judicial diagnosis. This action-reaction

sequence was concluded, at least for our present purposes, by the decision in *Howard Savings Institution v. Quatra*, 38 *N. J. Super.* 174 *(Ch. Div.* 1955), which declared *N. J. S. A.* 17:9A–216, as above amended, unconstitutional.

The statute was overturned on the claim that it worked a denial of due process, infringed upon the mandate requiring equal protection of the law and violated the constitutional provision which demanded that each law shall embrace but one object which object must be expressed in its title.

The due process objection was predicated on the premise that the statute created a conclusive presumption as to the intent of the depositor-trustee thereby precluding judicial inquiry into the very basis of an *inter vivos* gift or trust—intent.

█ Statutes making proof of certain facts conclusive evidence of other facts are unconstitutional where there exists no logical connection or probability in experience to connect them. But the true legislative intent, though couched in terms of presumption, is often to make a rule of substantive law and if the Legislature may constitutionally do the latter, the form of the words will not defeat the intent. *City of New Port Richey v. Fidelity & Deposit Co. of Maryland,* 105 *F.* 2d 348 (5 *Cir.* 1939), 123 *A. L. R.* 1352; Annotation, 51 *A. L. R.* 1149 (1927), 86 *A. L. R.* 182 (1933).

█ The cases cited by respondents as contrary authority are all distinguishable in that the statutes there involved actually related to the question of intent when intent was a justiciable issue. The substance of the statute with which we are concerned, however, consists in a declaration by the Legislature, in the exercise of its broad powers over banking, to the effect that an account opened in trust form constitutes a gift revocable at will through specified procedures and that to the extent that such power of revocation is not exercised the surviving beneficiary is entitled to payment of the account. This is purely a rule of substantive law wherein certain legal effects are attached to a particular type of

200

voluntary commercial transaction. There appears no reason, on the facts of this case, why such a pronouncement should not be accorded its full effect. See generally, Sands, "Legislation," 11 *Rutgers L. Rev.* 10 (1956), *Clapp, Wills and Administration,* 5 *N. J. Practice,* § 7 (1962).

The objection to the statute on the ground that it constitutes a denial of the equal protection concept appears tenuous. The essence of the objection was that the statute permitted A to create a trust or make a gift of property without surrendering beneficial control over it by opening a trust account in a bank while B who also intended to create a trust or gift of the contents of a safe deposit box in the same bank and over which he alone exercised control was thwarted in his intent because no statute aided him. Certainly the Legislature has the right to clothe a particular transaction with certain attributes and so long as B is not prevented from utilizing the same device of a bank account in trust to effectuate his intent, no denial of equal protection is shown.

Also without merit is the objection offered to the title of the statute. The act was entitled "An Act to Amend 'the Banking Act of 1948.'" The court held that since the statute's effect was to create a new method of testamentary disposition, it was in reality an amendment to the Wills Act. The title not reflecting this reality, the enactment was deemed unconstitutional.

The purpose of the constitutional requirement sought to be imposed here as a barrier is to prevent frauds flowing from the use of misleading or deceptive titles. If the title is calculated to give to the Legislature notice of the subject to which the act relates and to the public notice of the kind of legislation under consideration and it can be said that the general subject matter is fairly expressed in the title, then there can be no constitutional objection. *State v. Zelinski,* 33 *N. J.* 561 (1960).

It must be remembered that statutes dealing with bank accounts in trust have, since 1903, always been found

in the banking acts. The title to an act is not an index, merely a label, and thus the title should not be scrutinized with an overly technical eye. See *Robson v. Rodriquez*, 26 *N. J.* 517 (1958); *City of Passaic v. Consolidated Police & Firemen's Pension Fund Commission*, 18 *N. J.* 137 (1955).

If, perchance, a title were utilized reflecting that a change was worked in the Wills Act by this statute the argument could be made, and perhaps more strongly than the one here advanced, that the enactment properly dealt with the duties of banks and the rights of those entering into transactions with those banks, with the result that the title might be held defective. Variations of this theme could be applied to many statutes. It must be remembered, however, that titles should be servants, not masters.

Accordingly, there is lacking here the semblance of the evil to which the constitutional mandate is addressed. See *State v. Zelinski, supra.* Parenthetically, it might be noted that just prior to the *Quatra* decision the Legislature, as if prescient, enacted *N. J. S. A.* 46:37-2 (*L.* 1954, *c.* 208, § 2) and *N. J. S. A.* 17:9A-216, *subd. F* (*L.* 1954, *c.* 209, § 1), both designed to validate accounts in trust, utilizing in the former law a title which indicated its relationship to the laws governing testamentary disposition and, in the latter, a title which related the new statute to the banking acts.

The statute now the subject of examination being constitutional, title to the 1950 account was vested in Walter at the time of his mother's death.

## IV.

Under the facts of this case there is no need to discuss the effect of the withdrawals from two of the accounts opened by testatrix; the asserted conflict between the trust set up in her will and the intent evidenced by her establishment of the trust accounts; the significance of opening

an account on the same day that the will was executed; the lack of knowledge by Walter concerning the existence of the accounts in trust; or any of the other objections advanced by respondents. All these elements acquire meaning only if we had concluded that the statutes either provided for the creation of a "tentative trust" or supplied mere *prima facie* proof of a donative intent. As above stated, we view the statutes as attaching other specific consequences to the acts of the depositor-trustee. The statutes were undoubtedly fashioned on the premise that the maintenance of such an account demonstrated the existence of a donative intent and that this intent should be accorded full effect through the instrumentality of a gift revocable *pro tanto* by the depositor-trustee's withdrawals. In short, the Legislature has provided for a method whereby property may be transferred to another upon death. It is of no moment that the transaction does not satisfy the demands of the Statute of Wills or of the common law concept of gifts. The Legislature is free to modify these, and here did so. The beneficiary's right to the account upon the prior death of the depositor-trustee, however, remains open to attack upon classic equitable grounds such as fraud, duress, undue influence and mistake.

Judgment is reversed without costs to any party and remanded for entry of an order consistent with this opinion.

*For reversal*—Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—7.

*For affirmance*—None.