89 N.J. Super. 293 (1965)
214 A.2d 713
IN THE MATTER OF THE ESTATE OF ESCOBEDO SARREALS POSEY, DECEASED.
Superior Court of New Jersey, Union County Court, Probate Division.
Decided November 8, 1965.
*297 Mr. Robert I. Pearlman and Mr. David A. Roth attorneys for plaintiffs.
Mr. Jacob M. Goldberg attorney for defendant.
FULOP, J.C.C.
This is an action by two nieces and a nephew of the decedent to compel the executrix to pay over to them the proceeds of decedent's account in a credit union. The executrix resists upon the ground that she is the individual owner of the account.
Decedent, Mrs. Escobedo Sarreals Posey, was employed by the State of New Jersey in Trenton. She was a member of the "Mercer Department of Labor and Industry Credit Union" (credit union). On April 6, 1948 she designated a friend, Marie E. Copeland, to receive the amount credited to her account with the credit union at her death. Thereafter, on May 20, 1950, decedent executed a will in which she named Mrs. Copeland executrix. Paragraph Fourth of the will provides:
"Fourth: I give, devise and bequeath to my beloved nieces, Satia Sarreals and Sonia Sarreals, and to my beloved nephew, EsPriela B. Sarreals, Jr., all the shares of stock which I may own at the time of my death in the Mercer County Credit Union located in the Trenton Trust Building, Trenton, New Jersey, to be divided equally among them, and should any of my said nieces and nephew pre-decease me, I give, devise and bequeath the distributive share which such deceased niece or nephew would have received if living at the time of my death to my dear friend, Marie E. Copeland."
Mrs. Posey died on July 12, 1963, and her will was probated in the Union County Surrogate's office on September 16, 1963. Mrs. Copeland qualified as executrix. She collected the sum of $2,053.11 credited to decedent's account with the *298 credit union, including $553.11, the proceeds of a life insurance policy payable to the credit union for the account of decedent. She took this sum for her own use. The nieces and nephew all survived decedent and are still living. The executrix failed to answer their inquiries. The nieces and nephew learned the facts from the credit union. They demanded that their legacies be paid over to them, but the executrix has refused and still refuses. The legatees seek an order to compel the executrix to pay over. The matter is submitted on a stipulation of facts.
The issue is whether the designation of Mrs. Copeland as beneficiary of the credit union shares of decedent constituted a perfected gift and prevails over the legacies in the will.
The naming of a beneficiary to receive a credit union account at the death of the owner is an arrangement between the member and the credit union governed by statute. In 1948 the governing statutory provision was L. 1938, c. 293, § 20, which has continued unchanged as N.J.S.A. 17:13-45. It reads:
"The amount credited to the account of any member in any such credit union, less any obligation to it for the payment of which such amount shall have been pledged, may upon the death of such member be paid by such credit union to any person who shall have been designated by such member during his lifetime to receive the same at his death; and such designation shall be made by an instrument in writing filed by such member during his lifetime with such credit union and accepted by such credit union; and in the event of such payment the release or acquittance to such credit union of such person so designated or his heirs, executors, administrators or assigns shall operate to discharge such credit union of and from any liability to the heirs, executors, administrators and assigns of such deceased member; but such member shall, during his lifetime, have full control of his membership account and may assign, pledge or withdraw the same or may change or withdraw any such designation."
The effect of this statute and the designation of a beneficiary pursuant to it does not appear to have been passed upon in any reported case.
The legatees contend that the designation of a beneficiary is inoperative as a gift inter vivos. They also contend that it *299 is invalid as a gift effective at death because it does not comply with the statutory requirements for testamentary disposition of property contained in N.J.S. 3A:3-2 et seq. They rely on Stevenson v. Earl, 65 N.J. Eq. 721 (E. & A. 1903).
The executrix contends that under the statute the designation of a beneficiary constitutes a completed gift inter vivos and should be sustained by analogy to provisions in the Banking Act. In the alternative, she contends that the contract between the credit union and the decedent was a contract for the benefit of a third party effective upon death, and is taken out of the requirements of the Wills Act as is a policy of life insurance. She relies upon In re Koss, 106 N.J. Eq. 323 (E. & A. 1930).
The statutory provisions permitting the naming of a beneficiary to receive a bank account upon the death of the depositor (N.J.S.A. 17:9A-217) do not apply to credit unions. A credit union is not a banking institution as defined in N.J.S.A. 17:9A-1 (2). Credit unions are governed by chapter 13 of Title 17 of the Revised Statutes, which is complete and separate from provisions applicable to banks and other financial institutions. A credit union is a membership organization in which the members buy shares and from which they may borrow. N.J.S.A. 17:13-26. The member's account consists of shares purchased plus profits credited, less charges for losses. N.J.S.A. 17:13-40.
A credit union is also not a savings and loan association. The provisions of N.J.S.A. 17:12A-48.2, similar to N.J.S.A. 17:9A-217, are therefore also inapplicable. Cf. Chary v. First Savings & Loan Assn. of Little Falls, 32 N.J. 418 (1960).
The history of the legislation dealing with attempted gifts of bank accounts effective upon the death of the donor is instructive. Until 1948 none of these provided that an individual depositor in a bank or trust company might designate a beneficiary to receive the balance in his account upon his death. Such a provision was first introduced in the 1948 *300 revision of the banking laws, L. 1948, c. 67, § 217. This provision, as amended, is now N.J.S.A. 17:9A-217.
Prior to 1948 and beginning with L. 1903, c. 210, a series of statutory provisions was enacted recognizing tentative or Totten trusts in bank accounts and permitting the banking institutions to pay over to a person named cestui que trust by the depositor, the balance in such an account upon the death of the depositor. This was and is a device used to make a gift at death without complying with the Statute of Wills. The current statute validating such gifts is N.J.S.A. 17:9A-216. The history of this legislation and its treatment in the courts appears in Howard Savings Inst. v. Kielb, 38 N.J. 186 (1962), sustaining such gifts.
Another device for making a gift of a balance in a bank account at the death of a depositor is the joint account payable to the survivor or survivors upon the death of one of two or more persons named as depositors. Such gifts are provided for in N.J.S.A. 17:9A-218 and were held valid in Ward v. Marine Nat'l Bank, 38 N.J. 132 (1962).
Under earlier statutes both of these devices were held ineffectual to effect a gift and settle the ownership of the accounts. In the case of joint accounts the gifts were sustained if donative intent was established by the survivor but not otherwise. Kaufman v. Edwards, 92 N.J. Eq. 554 (Ch. 1921); Stiles v. Newschwander, 140 N.J. Eq. 591 (E. & A. 1947). The tentative or Totten trusts were held ineffectual unless it was shown that an inter vivos trust or gift had been completed. Nicklas v. Parker, 69 N.J. Eq. 743 (Ch. 1905), affirmed 71 N.J. Eq. 777 (E. & A. 1907).
In Howard Savings Inst. v. Kielb, 38 N.J. 186 (1962), and Ward v. Marine Nat'l Bank, 38 N.J. 132 (1962), above referred to, Justice Haneman pointed out that the earlier statutes provided that the deposit in trust or the joint account "may be paid to the person for whom the said deposit was made" (emphasis supplied), while the later statutes, beginning with L. 1932, cc. 40, 41, 42 and 43, and L. 1936, c. 212, provided that the deposit "shall be paid" to the person "in *301 trust for whom the said deposit was made" and "shall be paid to the survivor and the legal representatives of the one dying shall not have any claim or right thereto." (Emphasis supplied) The word "may" was held to be permissive and the statutes were held designed "only to protect the trust company should it pay over the moneys so deposited to the named beneficiary" or survivor. Jefferson Trust Co. v. Hoboken Trust Co., 107 N.J. Eq. 310 (Ch. 1930); Reeves v. Reeves, 102 N.J. Eq. 436 (Ch. 1928). The word "shall" was held mandatory and to effectuate a gift. Further the legislation now provides a conclusive presumption of gift and exemption from the provisions of the Wills Act.
In N.J.S.A. 17:13-45 relating to credit unions the word used was and is "may," as in the banking statutes prior to 1932. The credit union is permitted to pay to the beneficiary designated, but is not required to do so. The statute was adopted subsequent to cases which held that similar provisions in the banking laws were merely for the protection of the institution. Further, the statute does not provide that the designation of beneficiary shall give rise to a presumption or conclusive presumption of intent to make a gift, does not expressly cut off the rights of the donor's estate or his heirs or legatees, and does not provide that the Wills Act shall be inapplicable. The credit union provision is therefore clearly distinguishable from present and all recent prior provisions in the banking statutes. On the contrary, it uses the same language as the banking statutes of 1903, 1906 and 1907.
The banking statutes are not in pari materia with the credit union statute but they are cognate. Statutes on cognate subjects may be referred to in arriving at legislative intent. State v. Brown, 22 N.J. 405 (1956); Modern Industrial Bank v. Taub, 134 N.J.L. 260 (E. & A. 1946). When words used in a statute have previously received judicial construction, the Legislature will be deemed to be using them in the sense that has been ascribed to them. American Woolen Co. v. Edwards, Comptroller, 90 N.J.L. 69 (Sup. Ct. 1916), affirmed 90 N.J.L. 293 (E. & A. 1917); River *302 Development Corp. v. Liberty Corp., 51 N.J. Super. 447 (App. Div. 1958), affirmed 29 N.J. 239 (1959). It is to be assumed that the Legislature is thoroughly conversant with prior legislation and the judicial construction placed thereon. Barringer v. Miele, 6 N.J. 139 (1951); State v. Gussman, 34 N.J. Super. 408 (App. Div. 1955), at point 5. Although the maxim, expressio unius est exclusio alterius, is merely an aid to interpretation "an express provision with respect to a portion of an area" may reveal "by implication a decision with respect to the remainder." Reilly v. Ozzard, 33 N.J. 529, 539 (1960).
Maxims of statutory construction are generally mere expressions of reasonable inferences as to legislative intent. In the present situation the Legislature was necessarily aware of the construction given to the banking statutes before the adoption of the 1938 credit union provision. The Legislature carefully and repeatedly amended the banking statutes, but adopted and retained the old language in the credit union statute. The legislative intent seems clear to give protection to the credit union which pays out to a named beneficiary, without affecting the property rights in the account as between the beneficiary and the decedent's estate or other claimants. The property rights are to be determined under the classic principles applicable to gifts effective on death.
The executrix further argues that the credit union account is like a life insurance policy under which the insurer pays to the beneficiary named in the policy, free of control by the decedent's will.
In 94 C.J.S., Wills, § 148, it is said:
"The designation of a beneficiary or a change in beneficiary of life insurance or the like is not a testamentary disposition of property, and not within the statute of wills, particularly as during the lifetime of the insured there is no specific property owned by him or to which he is entitled, and instead of the designation of the beneficiary being a disposition of property, it is the mere naming of a person for whose benefit a contract is made. * * *"
*303 Cf. Strohsahl v. Equitable Life Assur. Soc. of U.S., 71 N.J. Super. 300 (Ch. Div. 1962).
Moreover, N.J.S.A. 17:34-28 provides in part as follows:
"When a policy of insurance is effected by any person on his own life, or on another life in favor of a person other than himself having an insurable interest therein, the lawful beneficiary thereof, other than himself or his legal representatives, shall be entitled to its proceeds, against the creditors and representatives of the person effecting it. * * *"
The credit union account was not a life insurance policy. It was a debt due to decedent after demand.
The issue is complicated by the fact that proceeds of a life insurance policy payable to the credit union were added to the decedent's account upon her death pursuant to the terms of the policy. It may be argued that since the policy was payable to the credit union for the account of the decedent, and decedent had designated Mrs. Copeland as the beneficiary of the account, she had thereby named Mrs. Copeland as the beneficiary of the life insurance as effectively as though the designation had been made in the policy. However, there is an essential distinction. When a beneficiary is named in the policy or by endorsement, there is an immediate contractual relationship between the insurer and the beneficiary who acquires a vested interest subject to divestiture upon a change of beneficiary by decedent during her lifetime. This is not true when the policy is payable to the insured or the insured's estate, or where no beneficiary is named. In the latter situations the proceeds are payable to decedent's estate. The present case, in which the policy was payable to the credit union for the account of decedent, is more nearly like the case of a policy payable to herself or to her estate. It was intended to be added to the credit union account and to pass to whoever became legally entitled to that account.
The right to the credit union account is therefore not governed by the statutory provisions applicable to accounts in banking or savings and loans institutions, nor by the statutory *304 provision applicable to life insurance contracts payable to a named beneficiary. It is not concluded by the provisions of the statute (N.J.S.A. 17:13-45) permitting payment by a credit union to a designated beneficiary. It must be decided under the general law applicable to gifts to take effect at death.
A gift to take effect at death must comply with the statutory requirements for wills which were clearly not complied with here. An inter vivos gift is not required to comply with the requirements of the Wills Act, even though use and enjoyment are postponed until the donor's death. The essentials of an inter vivos gift are: (1) a donative intention; (2) delivery to the donee; (3) in the case of a chose in action not capable of delivery, the donor must during his lifetime strip himself of all dominion over the thing given. Cook v. Lum, 55 N.J.L. 373 (Sup. Ct. 1893); Hickey v. Kahl, 129 N.J. Eq. 233 (Ch. 1941); C.J.S. Gifts §§ 15 to 20, inclusive, and 45 to 51.
The naming of Mrs. Copeland as beneficiary with the retained right to change the beneficiary and full control of the account by the decedent clearly failed to effectuate an inter vivos gift.
A contract with a third party for the benefit of the donee is also free of the requirements of the Wills Act, provided that a property interest is created in the donee during the lifetime of the donor, even though performance is delayed until the death of the donor. Essentials of such a contract are a binding promise by a third party for a consideration to pay to the donee after the death of the donor, which arrangement cannot be altered by the donor without the consent of the promisor. Bendit v. Intarante, 70 N.J. Super. 116 (App. Div. 1961). See also Green v. Tulane, 52 N.J. Eq. 169 (Ch. 1893). Here there was no binding promise by the credit union, no interest was created in the donee during the lifetime of the donor, and the donor retained full control of the account during her lifetime. The attempted disposition was clearly testamentary.
*305 The leading relevant case is Stevenson v. Earl, 65 N.J. Eq. 721 (E. & A. 1903). The fund in dispute was on deposit in an employee savings plan known as the "Pennsylvania Railroad Employees' Savings Fund." The rules to which the decedent agreed provided that upon the presentation of satisfactory proof of the death of a depositor "the money belonging to him shall be paid over to the person designated in his application to receive the same." Decedent designated his wife to receive the fund. About two months before his death decedent executed a will leaving the residue of his estate to his executor in trust. The executor claimed the fund. The Court of Errors and Appeals determined that decedent had a donative purpose toward his wife with respect to the balance remaining in the fund at the time of his death, but not with respect to the whole amount deposited by him. The court therefore held that the gift was testamentary and failed because it did not comply with the requirements of the statute of wills. The case has been cited on innumerable occasions in subsequent cases. It has never been overruled, although it has been distinguished and criticized. 5 N.J. Practice (Clapp, Wills and Administration), § 13, p. 49 (1962).
In In re Koss, 106 N.J. Eq. 323 (E. & A. 1930), the court held that a designation of beneficiary by an employee participating in a corporate stock purchase plan was effectual to vest the proceeds in the beneficiary as against the administratrix of the deceased employee. The court distinguished Stevenson v. Earl, supra, upon the ground that "[T]here is no specific property to which Gertrude Koss in her lifetime was ever entitled," since the plan provided that the employee might withdraw during her lifetime only her contributions and interest, but none of the contributions of the company to the plan. The plan was said to be similar to a life insurance contract providing for payments to the beneficiary on the death of the insured which are not payable to the insured during his lifetime. On the basis of the court's factual finding, the case does not govern the present situation.
*306 The basic purpose of the Wills Act is to provide safeguards "rigorously thrown about the testamentary act in order to forestall frauds by the living upon the dead." In re Taylor, 28 N.J. Super. 220 (App. Div. 1953). The objective of all of the multitude of cases dealing with the exceptions to the testamentary requirements has been to effectuate the intent of the testator where possible, without breaking down the protection of the Wills Act and opening the door to the frauds which the Wills Act was designed to prevent. The exceptions provided by statute with respect to bank accounts, and the exception for third-party beneficiary contracts, are supported by a clear expression of final intent by the donor evidenced by unmistakable manifestations placed in the hands of third parties. Thus, in all of these cases, substitutes for the safeguards provided in the Wills Act have been provided.
Here we have no legislative mandate compelling the court to give conclusive force to the designation of beneficiary, and we have a strong legislative mandate in favor of effectuation of a duly executed last will and testament. Furthermore, the available evidence indicates that the testator's intent was expressed by her will and not by her act in naming Mrs. Copeland beneficiary of the account.
We have no direct evidence of testator's intent in naming defendant beneficiary. The burden of proof of such intent is upon the donee. Nicklas v. Parker, supra. Even if the designation of beneficiary were deemed prima facie proof of a donative intent, the fact that decedent made specific contrary disposition of the credit union shares in her will made about two years after the designation of defendant as beneficiary, and the fact that decedent left both the designation and the will in effect for 13 years until her death is persuasive evidence that no gift to Mrs. Copeland was intended by designating her beneficiary. It is reasonable to conclude that decedent named Mrs. Copeland to receive the fund as her intended executrix, to dispose of it in accord with decedent's will.
*307 In Stiles v. Newschwander, 140 N.J. Eq. 591 (E. & A. 1947), Justice Heher said, with respect to a joint bank account:
"* * * Intention is a matter of fact not of formula. The form of the account may raise a rebuttable presumption either of a joint tenancy or of common ownership, indicating an intention to transfer a present beneficial interest to the donee, but it is not a substitute for the intention itself. If there was in fact no intention to transfer an interest in praesenti, there was not a gift inter vivos. If, in the absence of evidence contra, the presumptive inference of an intention to make a gift presently effective is drawn from the frame of the deposit, it is one thing; but where the evidence affirmatively shows a contrary intention or no intention at all, one of the essential requisites of a gift inter vivos is wanting." (at p. 594)
Defendant accepted appointment as executrix, qualified and still holds the office. As such it was her duty to execute the will to the letter so far as possible and legal. She had no right to resolve a conflict between her personal interests and the provisions of the will in her own favor. First Camden National Bank, & Trust Co. v. Wilentz, 129 N.J. Eq. 333 (Ch. 1941); 33 C.J.S. Executors and Administrators § 145.
In 33 C.J.S. Executors and Administrators § 128, it is said:
"A personal representative who takes possession of property in his fiduciary capacity is generally estopped to deny the title of his decedent or to set up an adverse title to the injury of those beneficially interested in the estate. * * *"
For these reasons the executrix will be ordered to pay over to the nieces and nephew the amount she has received from the credit union, together with legal interest from the date when she received the same and the costs of these proceedings.
A form of judgment should be presented within ten days, in compliance with the provisions of R.R. 4:55-1.